STATE OF CONNECTICUT *v.* ALLAN DEGOURVILLE
(13289)

Dupont, C. J., and Foti and Lavery, Js.

---

Argued March 21—officially released June 18, 1996

*Melvin A. Simon*, special public defender, with whom, on the brief, was *Stephen V. Moran*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Thomas Prior*, assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, following his plea of nolo contendere,[1] of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b). The defendant claims that the trial court improperly denied his motion to suppress evidence obtained in violation of his rights under the fourth and fourteenth amendments to the United States constitution and article first, §§ 7 and 8,

---

[1] The plea was entered conditioned on the right to take an appeal pursuant to General Statutes § 54-94a and Practice Book § 4003.

of the Connecticut constitution. We affirm the judgment of the trial court.

Following an evidentiary hearing, the trial court found the following facts. On March 4, 1993, at approximately 8:05 a.m., Detectives Raymond Cruz and James Chrustal of the Hartford police department were called to the site of a fatal motor vehicle accident at the intersection of West Preston and Newbury Streets in the city of Hartford. Upon arriving, they were advised that a 1983 Jeep had been traveling east on West Preston Street when it was struck by a vehicle traveling south on Newbury Street. The southbound vehicle ran a stop sign and struck the rear of the Jeep, causing it to roll over and the operator to be ejected, which resulted in his death. The southbound vehicle fled the accident scene but was followed by an eyewitness who secured the license number. The eyewitness described the fleeing automobile as a dark blue vehicle with Connecticut registration plate 801-HTU. Police at the collision scene collected debris from the accident, photographed the scene, took measurements and conducted other routine police investigative procedures.

While at the accident site, the Hartford police detectives received a message from the Wethersfield police department that during normal surveillance of an area at 66 Village Drive in Wethersfield they observed a vehicle matching the description of the evading vehicle. The Wethersfield police described the vehicle as having considerable damage to the front end on the driver's side, consistent with the fleeing vehicle. Subsequently, the detectives went to that location and compared fragments of the bumper and light assembly with the suspect automobile. The comparisons indicated that this vehicle was the one involved in the fatal hit and run accident.

The vehicle at 66 Village Drive did not bear Connecticut registration plate 801-HTU but rather a Massachu-

setts license plate secured to the car by one screw. From evidence obtained at the scene, the officers determined that the owner of the vehicle was at that address in apartment 305. The detectives proceeded to the apartment and knocked on the door. The defendant, Allan Degourville, answered the door and invited the police officers into his apartment.

The defendant admitted that the damaged vehicle was his. He indicated that he did not know who had been driving it or how it was damaged, and did not have the keys to the vehicle as they were in the possession of his girlfriend who had recently left his apartment. The defendant's answers were evasive and he appeared nervous. At that time, the officers saw automobile keys on a countertop near the door of the apartment.

The officers then read the defendant his rights. The defendant agreed to accompany the detectives to police headquarters to answer questions regarding the damage to the motor vehicle. As the Hartford detectives were preparing to exit the apartment, Cruz received a message from the Wethersfield police department that a blue and white license plate bearing letters HTU could be seen in a bedroom window in the defendant's apartment.[2] Cruz and Chrustal left the apartment to return to Hartford to prepare and obtain a search and seizure warrant for the defendant's apartment in order to seize license plate 801-HTU as well as all papers associated with the registration of the vehicle. The police officers believed that these items constituted evidence of negligent homicide, evading responsibility and misuse of license plates.

Moments prior to when Cruz and Chrustal left the apartment, Sergeant Michael Manzi of the Hartford police department arrived at 66 Village Drive and dis-

---

[2] The Wethersfield police obtained this information from an anonymous phone call.

cussed the situation with Cruz. Manzi determined that the apartment should be secured to prevent the removal or destruction of evidence. Officer Jeffrey Falk of the Wethersfield police department remained in the apartment, along with Manzi and another officer. Manzi instructed the other officers to do a protective sweep of the apartment for safety reasons. Manzi went to the west side of the apartment where a bedroom with a walk-in closet was located. He entered the closet and saw a jacket on a hanger with a large bulky item in the coat pocket. Manzi indicated that it "appeared to be contraband . . . cocaine in the coat pocket." Having determined that there was no threat to his safety, he returned to the kitchen where he waited until the warrant arrived. Manzi had ordered the protective sweep "simply and solely to see if there was anyone else in the apartment who could be a threat to the officers in the apartment." Manzi notified the officers from the Wethersfield police department of what he had observed in the bedroom closet so that they would be able to obtain a separate search warrant to search for the presence of drugs or contraband.

Detective Mark Miele of the Wethersfield police department also arrived at the apartment during the early part of the investigation. Miele had intelligence from other sources that the defendant might be involved with drugs. This information was not communicated to Cruz or Chrustal. Miele did not enter the apartment until later in the afternoon, after the Hartford police had obtained a search warrant. When Miele entered the apartment, he was shown the closet in the bedroom. The closet was not crowded and he observed a tan colored jacket that he assumed to be a male's jacket. Inside the lower left pocket of the jacket were two or three large plastic bags containing "enough substance to actually weigh the jacket down." Field tests of the substance for cocaine yielded positive results. The

cocaine and other evidence of illegal drug transactions were subsequently seized by the Wethersfield police with the separate warrant they had obtained.

The trial court found it undisputed that the defendant consented to the officers' entering his apartment and that he never withdrew his consent. The bedroom and closet were immediately adjoining the place where the defendant had allowed the officers to enter and where they remained to await the search warrant. The trial court further found that the officers were justifiably concerned about their safety, and that they had independently obtained sufficient information to obtain a search warrant for the motor vehicle offense.

In denying the defendant's motion, the trial court concluded that the contraband was observed during a lawful protective sweep, and, in any event, the evidence would inevitably have been discovered during the execution of the search warrant for the motor vehicle offense.

The defendant argues that (1) the evidence was not obtained during a lawful protective sweep, and (2) under both the federal and state constitutions, securing the premises from within, to preserve the status quo, precludes admission of evidence discovered independently.

We conclude that the trial court correctly applied the independent source doctrine to the facts found, and properly determined that the evidence seized would have inevitably been discovered, under the circumstances of this case. We note initially that the two doctrines are closely related and possess a functional similarity. *State* v. *Rogers*, 18 Conn. App. 104, 114, 556 A.2d 1030 (1989), citing *Nix* v. *Williams*, 467 U.S. 431, 443–44, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). The inevitable discovery doctrine is an extrapolation from the independent source doctrine. *Murray* v. *United States*, 487 U.S. 533, 539, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988).

"Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. . . . To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation." (Citation omitted.) *State v. Badgett*, 200 Conn. 412, 433, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). The inevitable discovery exception to the exclusionary rule is premised on the concept of fairness. "Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place." *Nix* v. *Williams*, supra, 467 U.S. 447.

The trial court found significant that the defendant did not challenge any police procedure or information contained in the affidavit and application for the search and seizure warrant dealing with the motor vehicle offense. Even if we assume, arguendo, that the police had established a perimeter stakeout, and not conducted the protective sweep, the evidence now challenged would nevertheless have been discovered and seized as contraband pursuant to the first warrant. The warrant obtained in connection with the motor vehicle offense has no dependency on, or correlation to the alleged constitutionally invalid protective sweep. While the trial court made no such specific findings, we find the record is adequate to reach such a conclusion.[3] See *State* v. *Roseboro*, 221 Conn. 430, 446, 604 A.2d 1286

---

[3] The question of when a remand is necessary for further findings on the issue of inevitable discovery is presently pending in the Supreme Court. *State* v. *Rodriguez*, 235 Conn. 939, 669 A.2d 377 (1995).

(1992); *State* v. *Vargas*, 34 Conn. App, 492, 500, 642 A.2d 47, cert. denied, 230 Conn. 907, 644 A.2d 921 (1994).

The trial court found that sufficient independent information had been gathered by the police to obtain the search warrant for vehicle registration papers. Moreover, the trial court determined that the police detectives left to obtain that warrant prior to the protective sweep, and prior to any determination ever being made to secure the premises.

We conclude that the trial court properly found that the independent source that inevitably would have revealed the presence of cocaine in the defendant's apartment was the search warrant associated with the motor vehicle accident, the validity of which has not been challenged. The evidence properly was not suppressed because it was procured on the basis of sufficient information obtained independently of the alleged improper protective sweep.[4] Having so concluded, we find it unnecessary to address the issue of whether the prewarrant protective sweep of the defendant's premises violated either his state or federal constitutional rights against unreasonable searches.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The inevitable discovery exception to the exclusionary rule is recognized by both our state and federal courts.