## JAMEL BURKE *v.* COMMISSIONER OF CORRECTION
### (AC 24800)

Schaller, Flynn and Gruendel, Js.

Argued April 19—officially released July 26, 2005

*Jane E. Carroll,* special public defender, for the appellant (petitioner).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Maureen M. Keegan,* executive assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Jamel Burke, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The habeas court granted the petition for certification to appeal. The petitioner claims that the court improperly concluded that he was not deprived of the effective assistance of trial counsel. We affirm the judgment of the habeas court.

In the opinion affirming the petitioner's conviction, this court stated that the jury reasonably could have found the following facts. "On May 27, 1995, the victim, John J. Walsh, Jr., was working at the Fox Cafe as a doorman. A Fox Cafe employee found the victim on the ground in the Fox Cafe parking lot with blood flowing from his right temple. The victim was taken to the Waterbury Hospital emergency room . . . . [He died from his injuries.]

"On the basis of a tip, the police questioned David Monell regarding the homicide. After questioning Monell, the police obtained a search and seizure warrant for the [petitioner's] person and residence. The police brought the [petitioner] to the police station, where he gave the police a written, signed statement. The [petitioner] indicated that on May 27, 1995, while at a party, he and Monell talked about breaking into a car to obtain a car stereo. They drove to the Fox Cafe where they noticed a Dodge Caravan with a car stereo and an alarm. They pulled into the parking lot next to the Fox Cafe, and the [petitioner] approached the Caravan with a flashlight and a screwdriver while Monell waited in his car. Using the screwdriver, the [petitioner] popped the front passenger window, setting off the car alarm, and reached in to open the Caravan door.

"The [petitioner] quickly removed the car stereo from the Caravan using the screwdriver and started to walk

back to Monell's car when he heard the victim running after him. The [petitioner] threw the stereo at the victim to stop him. The victim kept running, however, and tackled the [petitioner]. A struggle ensued, during which the [petitioner] swung both fists at the victim until he stopped struggling. When the [petitioner] returned to Monell's car, he noticed that he still had the screwdriver in his hand and 'figured that [he] stuck the . . . guy with the screwdriver.' The [petitioner] left the scene in Monell's car and returned to the party. The [petitioner] told Monell that he thought that he 'might have stabbed the guy.' " *State* v. *Burke*, 51 Conn. App. 798, 800–801, 725 A.2d 370 (1999), aff'd, 254 Conn. 202, 757 A.2d 524 (2000).

From May 15 through May 30, 1996, the petitioner was tried by the jury and represented by attorney Ralph Crozier. Following the jury trial, on June 12, 1996, the petitioner was convicted of felony murder in violation of General Statutes § 53a-54c and burglary in the third degree in violation of General Statutes § 53a-103 (a) and sentenced to forty-eight years of incarceration. The conviction was affirmed both by this court and our Supreme Court. See *State* v. *Burke*, supra, 51 Conn. App. 798; see also *State* v. *Burke*, 254 Conn. 202, 757 A.2d 524 (2000).

On January 31, 2001, the petitioner filed a pro se petition for a writ of habeas corpus alleging ineffective assistance of counsel as to his trial attorney, Crozier. Nearly two years later, on January 7, 2003, this petition was amended by the petitioner's appointed habeas counsel. In the amended petition, the petitioner claimed that Crozier was ineffective in failing to suppress a written statement that the petitioner had given to the police. The amended petition also included claims regarding alleged violations of the petitioner's fourth amendment rights, illegal arrest and denial of his right to a fair trial.

On September 24, 2003, the court, *Hon. Richard M. Rittenband*, judge trial referee, dismissed the habeas petition, finding that the court lacked jurisdiction with respect to the petitioner's fourth amendment claims and that, with respect to the claim of ineffective assistance of counsel, the petitioner failed to satisfy either prong of the test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The court found that the petitioner failed to meet the second prong of *Strickland* because even if Crozier had been successful in suppressing the petitioner's written statement, the result of the trial would not have been different, as the evidence against the petitioner was overwhelming. In reaching that conclusion, the court, relying heavily on testimony given by Crozier at the habeas proceeding, some of which was inaccurate, found the evidence against the petitioner to be overwhelming. That "overwhelming evidence" found by the court included the following matters, some of which were challenged by the petitioner: the petitioner's codefendant, Monell, issued a written statement which described the incident and clearly inculpated the petitioner; Monell already had pleaded guilty under a plea bargain with the state and was ready, if necessary, to testify against the petitioner; the petitioner's fingerprints were found on the flashlight and stereo that were dropped in the parking lot; the screwdriver left strands of hair, which belonged to the victim, on the floor of Monell's car; the petitioner had described details of the incident to a number of friends, who testified as to these inculpatory statements at trial; and the screwdriver was found in the petitioner's home.

After the petitioner filed his appeal, the respondent commissioner of correction filed a motion for rectification seeking to clarify or correct four of the six factual findings made by the habeas court in its September 24, 2003 memorandum of decision. Specifically, the respon-

dent noted that contrary to the court's findings: Monell did not enter his plea until after the petitioner was convicted and sentenced; the petitioner's fingerprints were not found on the flashlight or stereo; the testimony at the criminal trial was only that a strand of hair found in Monell's car was *similar* to that of the victim, not that it was the victim's; and the screwdriver was not recovered by the police. The petitioner filed a motion for articulation regarding the factual findings that the respondent listed in its motion for rectification and claimed that these findings had no factual basis. In a memorandum of decision filed June 10, 2004, the habeas court addressed the respondent's motion for rectification and the petitioner's motion for articulation, and stated that it would not change its conclusions that the evidence was sufficient to convict the petitioner even if the statement had been suppressed and that Crozier was not ineffective.

As an initial matter, we set forth our standard of review. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 299, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, [supra, 466 U.S. 687] the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he

must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 798, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

In the present case, the petitioner claims that the habeas court improperly determined that Crozier did not provide ineffective assistance of counsel when, at the suppression hearing, he decided not to contest the admission of the petitioner's statement to the police[1] because he believed that suppression of that statement was irrelevant. Specifically, the petitioner claims that the court incorrectly determined that *Strickland*'s first prong was not satisfied because the court credited Crozier's faulty analysis of the state's evidence.[2] The peti-

---

[1] In a written statement signed by the petitioner and dated June 13, 1995, the petitioner admitted to the police that he broke into the Caravan and also stated: "I got the stereo out of the Caravan real quick. I started to walk back to [Monell], and I heard someone's feet. I saw a white guy running at me, so I threw the radio at the guy to stop him from running after me. The guy kept running after me and tackled me and we both fell to the ground. . . . I was struggling with the guy and started swinging both my fists at the guy and then the guy stopped struggling. When I got back to [Monell's] car, I still had the screwdriver in my hand and figured that I stuck the white guy with the screwdriver. . . . [W]e headed back to the party. . . . I told John and Bob Farina and Derrick Morgan about what happened."

[2] The petitioner claims that the first prong of *Strickland* was satisfied because Crozier performed an inadequate investigation into the state's evidence, which led counsel to believe incorrectly that the state already had inculpating evidence against the petitioner, such as the screwdriver and flashlight with the petitioner's fingerprints on it, a strand of hair from the victim that was found in Monell's car and that Monell was ready, if necessary, to testify at trial against the petitioner. That investigation led Crozier to

tioner further claims that although he was prejudiced by Crozier's failure to suppress his statement, which the petitioner claims was subject to suppression on fourth amendment grounds, the court improperly determined that the petitioner had not satisfied the second prong of *Strickland* because it credited inaccurate testimony given by Crozier at the habeas proceeding. We are not persuaded.

The petitioner has not met the second prong of *Strickland* and, therefore, cannot prevail on his claim of ineffective assistance of counsel. "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988). Although the court based its determination of lack of prejudice, in part, on factual findings that it later corrected in response to the petitioner's motion for articulation and the respondent's motion for rectification, the petitioner has not proven that the result of the trial would have been different if counsel had contested the admission of the petitioner's statement.

First, there was enough evidence elicited during trial in support of the state's case so that any deficient performance by the petitioner's trial counsel was not prejudicial to the defense. Derek Morgan, Robert Farina and John Farina attended a cookout at Morgan's house on May 27, 1995. Each testified that the petitioner had come to the cookout and described to them the crimes he had committed earlier that day. Morgan testified that on May 27, 1995, the petitioner attended a cookout at

make the strategic decision that suppression of the petitioner's statement was irrelevant. The petitioner claims that because the habeas court credited Crozier's faulty analysis of the evidence the state possessed prior to trial, it improperly determined that Crozier's strategic decision not to argue against admission of the petitioner's statement was reasonable.

his house. Morgan stated that the petitioner had left the party and when he returned he seemed nervous and told him and others that "some guy ran up to me at the Fox Cafe from behind and I swung and I stuck him." Robert Farina testified that the petitioner and Monell had left the cookout and that when they returned, the petitioner stated that "they went to the Fox's, he got a radio, and when he was running away with the radio in his hand, he was tackled to the ground. He said he turned around and swung once, hit this kid, he looked, the kid was laid on the ground, and he ran back to the car and they left." Robert Farina further stated that the petitioner did not say where he hit the person, but that "he just turned around and swung once." Robert Farina's brother, John Farina, was also at the cookout. He testified that while at the cookout, the petitioner told him that he had broken the window of a van, had gotten the stereo out, and had seen someone come after him and "got him from behind and tackled him to the ground and they started wrestling on the ground . . . and they got up . . . [the petitioner] got up first . . . then he said he swung at him and the guy just went down." He stated that the petitioner told him that he had a screwdriver in his hand when he swung at the man.

The petitioner argues that if his statement had been suppressed there was a strong likelihood that the result at trial would have been different. The petitioner argues that if his statement was suppressed, the statements of Robert Farina and John Farina would have been suppressed under the fruit of the poisonous tree doctrine.

The premise of this argument is that the police were led to the Farinas by the petitioner's statement, which identified the Farina brothers as persons to whom he had admitted stabbing the victim. The petitioner also argues that it was not certain that Monell would testify when he had charges pending against him and, thus,

there was a reasonable probability that the state's case would have rested solely on Morgan's testimony.

The petitioner ultimately asks us to conclude that Morgan would have been the only state's witness. He then argues that with Morgan as the state's only witness, there is a strong probability that the result would have been different.

The petitioner has not established that there is a reasonable probability that this chain of events would have occurred. Mere conjecture and speculation are not enough to support a showing of prejudice. See *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 624, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999).

First, the petitioner assumes that if Crozier vigorously had sought to have the petitioner's statement suppressed, he would have been successful. The petitioner then adds another assumption, arguing that if the statement had been suppressed, the testimony of the Farina brothers would have been suppressed under the fruit of the poisonous tree doctrine because the petitioner said in his statement that he told the Farina brothers about the incident. In making this claim, the petitioner overlooks the fact that Morgan, whose name had been provided to the police by Monell, gave a statement to the police in which he explained that the petitioner, upon returning to his party, told him *and* the Farina brothers about the incident. In light of this, the petitioner has not shown that there is a reasonable probability that the testimony of the Farina brothers would have been excluded as fruit of *his* statement.[3]

---

[3] We make no conclusions on the basis of the "inevitable discovery" rule because the habeas court did not expressly make factual findings about it or ground its decision on it. See *State* v. *Degourville*, 41 Conn. App. 772, 778, 678 A.2d 485, cert. denied, 239 Conn. 907, 682 A.2d 1008 (1996).

The petitioner next assumes that Monell would have invoked his fifth amendment privilege if asked to testify at trial and, therefore, would not have given testimony incriminating him. In an effort to establish this, the petitioner could have called Monell to testify at the habeas proceeding to ask him whether he would have invoked his fifth amendment privilege at trial. The petitioner did not do this, however, and there is no evidence that Monell was unavailable to testify at the habeas proceeding. We cannot speculate that Monell would have invoked his privilege, and the petitioner has done nothing more than provide us with conjecture.

Finally, the petitioner assumes, as the last link in a sequence of events, that Morgan would be the state's only witness and that it was likely that the jury would not have found the petitioner guilty of felony murder solely on the basis of Morgan's testimony, despite the fact that Morgan's testimony placed the petitioner at the scene of the crime and described how the petitioner had said that he had struck the victim. The petitioner overlooks the fact that the state may have chosen to put on additional evidence if it were left with only Morgan's testimony. That aside, the petitioner's conclusion that the state would be left with only Morgan's testimony depends, for its existence, on speculation and conjecture in which we will not engage. The petitioner has not established that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. See *Carey* v. *Commission of Correction*, 86 Conn. App. 180, 182, 860 A.2d 776 (2004), cert. denied, 272 Conn. 915, 866 A.2d 1283 (2005). Because the petitioner has failed to establish that he was prejudiced by his trial counsel's representation, we conclude that the court properly dismissed the petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.