SHAWN CROCKER *v.* COMMISSIONER OF
CORRECTION
(AC 26603)

Schaller, Rogers and Lavine, Js.

Argued October 20, 2006—officially released May 8, 2007

*Joseph A. Jaumann*, special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ROGERS, J. The petitioner, Shawn Crocker, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that his trial counsel did not render ineffective assistance regarding (1) his failure to object to the admission into evidence of the transcript testimony of a witness from the petitioner's first criminal trial and (2) adequately investigating his case prior to his second trial. We affirm the judgment of the habeas court.

The relevant facts and procedural history are set forth in our decision affirming the petitioner's conviction on direct appeal. *State* v. *Crocker*, 83 Conn. App. 615, 852 A.2d 762, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). "Shortly before 7:30 p.m. on October 27, 1997, George David Wright drove a stolen Jeep Cherokee to the Quinnipiac Terrace housing complex in New Haven, also known as 'the Island.' The victim, Daryl Price, was in the passenger seat of the Jeep, and Calvin Taylor was seated in the back. At the housing complex, Wright and Taylor exited the vehicle, and Tacuma Grear

approached the Jeep to talk to the victim. They talked about the [fatal shooting] of Grear's brother, Corey Grear [by the victim], which had occurred approximately one week earlier, for which the victim . . . apologized. Corey Grear was a friend of the [petitioner], and the [petitioner] had held [Corey Grear] in his arms after Grear was fatally shot by the victim. The [petitioner] had witnessed the victim shoot Corey Grear. Corey Grear was also a member, as was the [petitioner], of the Island Brothers, a street gang into which the victim had been introduced and sponsored by the [petitioner]. As his sponsor, the [petitioner] was responsible for disciplining the victim should the victim kill a fellow gang member. As Tacuma Grear walked away from the Jeep, the [petitioner] had come up to the driver's side of the Jeep carrying a handgun. He then leaned into the Jeep and fired four times into the vehicle. Two .45 caliber bullets hit the victim, killing him, and two other bullets were found in the Jeep." Id., 619. After a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a and criminal possession of a firearm in violation of General Statutes § 53a-217.

Following his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus, alleging, inter alia, ineffective assistance of his trial counsel, Leo Ahern, who had represented the petitioner throughout his first criminal trial, which resulted in a mistrial, and then again in his second trial. The habeas court rejected the petitioner's claims of ineffective assistance of counsel but later granted the petition for certification to appeal. Additional facts will be set forth as necessary.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the

facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citation omitted; internal quotation marks omitted.) *Floyd* v. *Commissioner of Correction*, 99 Conn. App. 526, 529–30, 914 A.2d 1049, cert. denied, 282 Conn. 905, 920 A.2d 308 (2007).

"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 425, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

"The second part of the *Strickland* analysis requires more than a showing that the errors made by counsel may have had some effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citation omitted; internal quotation marks omitted.) *Porter* v. *Commissioner of Correction*, 99 Conn. App. 77, 83, 912 A.2d 533, cert. granted on other grounds, 281 Conn. 922, 918 A.2d 272 (2007).

"Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Internal quotation marks omitted.) *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 11–12, 916 A.2d 864 (2007).

I

The petitioner first claims that his trial counsel provided ineffective representation for failing to object to the admission into evidence of the testimony of Travis Jenkins from the petitioner's first trial and by subsequently objecting to the state's motion to open its case to allow Jenkins to testify. Specifically, the petitioner contends that Ahern's failure to object to the admission of the Jenkins transcript was constitutionally deficient and prejudiced him because the testimony in the transcript contained a prior inconsistent statement by Jenkins, which the petitioner argues was inadmissible under *State* v. *Williams*, 231 Conn. 235, 645 A.2d 999 (1994), overruled on other grounds by *State* v. *Murray*, 254 Conn. 472, 499, 757 A.2d 578 (2000) (en banc),[1] because Jenkins did not testify at the second trial and was not subject to cross-examination. We disagree.

The following additional facts are relevant to our resolution of the petitioner's claim. During the petitioner's second trial, the state presented evidence that it had been unable to procure the attendance of Jenkins, for whom the court previously had issued a capias. The court made a finding that the state had established, pursuant to § 8-6 of the Connecticut Code of Evidence and the common law, that Jenkins was unavailable to testify. The court then admitted into evidence Jenkins' testimony from the petitioner's first trial and permitted Ahern to preserve any objections he may have had as to the content of the testimony. After a recess in order

---

[1] In *State* v. *Williams*, supra, 231 Conn. 250, our Supreme Court held that it was improper, under *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), to admit into evidence the prior inconsistent statement of an individual who had been a witness in a prior proceeding where the declarant was not a witness in the trial in which the statement was admitted under *Whelan*. We take no position on the issue presented under *Whelan* because we determine that our consideration of the petitioner's ineffective assistance claim under the prejudice prong of *Strickland* is dispositive. See footnote 2.

to permit Ahern to review the transcript, the court asked him if he had any comments on the substance of the transcript, and he responded that he did not. After the state rested, and while the petitioner was presenting his case, the state informed the court that Jenkins was present. Ahern objected to the state's opening its case and calling Jenkins to testify, and the court sustained the objection. *State* v. *Crocker*, supra, 83 Conn. App. 653.

At the habeas trial, Ahern testified that he was concerned that Jenkins might show up to testify and when he did, Ahern did not want Jenkins to testify. He believed that Jenkins had been somewhat cooperative when he testified at the first trial and did not want to risk Jenkins giving potentially more damaging live testimony. He also was skeptical about the state's failure to locate Jenkins and wondered whether the state had tried to get him to say things that perhaps he did not say at the first trial.

We conclude that the petitioner has failed to demonstrate that there existed a reasonable probability that, absent the alleged errors by Ahern, the fact finder would have had a reasonable doubt respecting the guilt of the petitioner.[2] The Jenkins transcript was not strong evidence for the state. In the state's direct examination, Jenkins admitted that he initially told the police that the petitioner had shot the victim but recanted these prior statements on direct and cross-examination. Jenkins testified on direct examination and cross-examination that he was not present at the scene when the victim was shot and never saw the petitioner shoot the victim. He explained further on cross-examination that

---

[2] Because we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland*, we need not determine whether it constituted deficient representation for Ahern to fail to object to the admission of the Jenkins transcript and subsequently object to the state's motion to open its case to allow Jenkins to testify. See *Pierce* v. *Commissioner of Correction*, supra, 100 Conn. App. 12 n.5.

the only reason he told police that the petitioner had shot the victim was because the police had threatened to charge him with conspiracy to commit murder if he did not.

Additionally, the state presented other evidence probative of the petitioner's guilt. Detective Richard Pelletier testified during the second trial regarding the petitioner's motive for killing the victim, who was believed to have killed the petitioner's close friend, Corey Grear. Tacuma Grear testified for the state that he gave the police a tape-recorded statement, which was introduced into evidence. After reviewing that statement, Tacuma Grear testified that when four to five gunshots were fired, he saw someone who looked like the petitioner leaning toward the driver's side window of the vehicle in which the victim was a passenger and saw flashes. The state also introduced testimony from Wright identifying the petitioner as the shooter.[3] He testified that he saw someone fire gunshots into the Jeep in which the victim was sitting and as that person walked away, he recognized the petitioner's limp. Wright had known the petitioner for eight years. Wright also saw that that person was dressed in the same clothes that he had seen the petitioner wearing approximately twenty minutes before the shooting. Wright testified that he told the police two days after the shooting that he was sure that it was the petitioner who had shot the victim. See *State* v. *Crocker*, supra, 83 Conn. App. 646.

On the basis of the foregoing, we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland*. See *Strickland* v. *Washington*, supra, 466 U.S. 687.

---

[3] The state called Wright to testify, and he refused to respond to any of the state's questioning despite the court's order to testify. The court found that Wright was unavailable and permitted the state to introduce into evidence Wright's prior probable cause hearing testimony.

The petitioner has not demonstrated that there is a reasonable probability that, but for the admission of the Jenkins transcript, the result of the trial would have been different.

II

The petitioner next claims that his trial counsel was ineffective because he failed to investigate the state's evidence or obtain any discovery of the state's evidence prior to the start of the second trial in order to advise him properly concerning his right to testify. Specifically, he argues that Ahern was ineffective because he failed to discover two photographs that had been introduced in an unrelated criminal trial and failed to advise him not to testify on this basis. We are not persuaded.

The following additional facts are relevant to our resolution of the petitioner's claim. At his second trial, "[t]he [petitioner] testified and on cross-examination, the state asked if he was a member of the Island Brothers or if he had participated in gang activities or rituals. The [petitioner] responded that he did not. The state then had two photographs marked for identification. The [petitioner] then asked to be heard outside the jury's presence. Outside the jury's presence, the [petitioner] denied that he was depicted in the photographs giving an Island Brothers' hand sign. The state then offered the photographs as full exhibits. The court allowed the photographs into evidence, finding that their probative value outweighed any potential prejudice. . . . The photographs were admitted to impeach the [petitioner's] denial of membership in the Island Brothers. The photographs depicted the [petitioner], wearing a bulletproof vest, along with some individuals with Island Brothers tattoos, making the hand sign that members of the Island Brothers used to signify their membership in the gang." *State* v. *Crocker*, supra, 83 Conn. App. 641.

At the habeas trial, the petitioner testified that it was his understanding that Ahern did not conduct any discovery to obtain the photographs prior to the second trial and that Ahern did not discuss with him the possible effects of the photographs. He stated that Ahern had limited discussions with him concerning his testimony and that had he known that these photographs could have been used to impeach his credibility, it would have affected his decision to testify at trial. The petitioner admitted, however, that before he testified he had been made aware of the existence of the photographs by Carlos Ashe, with whom he had spoken while in lock-up. The photographs had been introduced in Ashe's unrelated criminal trial. The petitioner testified that he did not tell Ahern about the existence of those photographs.

Ahern testified that the petitioner, who had testified at his first trial, was a good witness. Although the ultimate decision to testify at the second trial had been made by the petitioner, Ahern agreed with that decision. Ahern further testified that he was unaware of the existence of the photographs from the Ashe trial until the petitioner was impeached with them during his testimony. Regarding his investigatory efforts, Ahern testified that by the time of the second trial, he had received witness statements from the state as well as materials from the petitioner's original attorney on the case, Michael Dolan, who had been disqualified. He testified that after obtaining the petitioner's file, he went to the Quinnipiac housing project on Dover Street in New Haven to investigate by speaking to the people there and seeing if they knew anything about the case. He testified that he did so prior to the petitioner's first trial and did so again between his first and second trials. In addition, he testified that he spoke with Dolan and worked with an investigator from the public defender's office to perform an investigation and to locate people.

"[C]onstitutionally adequate assistance of counsel includes competent pretrial investigation. . . . Hindsight is irrelevant. . . . [T]he issue, therefore, is not what counsel should have done to constitute the proper representation of the [petitioner] considering the case in retrospect, but rather, whether in the circumstances, as viewed at the time, the [petitioner] received effective assistance of counsel. . . . Furthermore, the effective assistance of counsel incorporates the obligation to investigate the circumstances of the case as well as all avenues leading to facts relevant to the merits of the case. . . . [C]ounsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 861–62, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). We do not conclude that Ahern's investigation was inadequate.

The habeas court found that the petitioner was aware of the existence of the photographs prior to taking the witness stand to testify but failed to advise Ahern about the existence of those photographs. The petitioner has offered no explanation as to how Ahern should have conducted discovery in connection with Ashe's unrelated criminal case, much less any legal authority that he was constitutionally required to do so. He failed to establish that Ahern's trial strategy of letting the petitioner testify at trial was unreasonable in light of what Ahern knew at the time, especially in view of the petitioner's failure to advise him of the existence of the photographs. Accordingly, we conclude that the petitioner has failed to satisfy the first prong of *Strickland* for establishing ineffective assistance of counsel. We, therefore, do not need to analyze the prejudice prong of that test. See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 428–29, 589 A.2d 1214 (1991)

(reviewing court can find against petitioner on either prong of *Strickland*).

The judgment is affirmed.

In this opinion the other judges concurred.