CLYDE TOLES *v.* COMMISSIONER OF CORRECTION
(AC 28985)

Flynn, C. J., and Beach and West, Js.

Argued December 4, 2008—officially released April 14, 2009

*Deren Manasevit*, special public defender, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Clyde Toles, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. In this appeal, the petitioner claims that the court, *Hon. Howard F. Zoarski*, judge trial referee, improperly rejected his claims alleging the ineffective assistance of (1) the counsel who represented him during his plea hearing and (2) the counsel who represented him during his violation of probation hearing. We affirm the judgment of the habeas court.

The following facts and procedural history provide the necessary backdrop to the disposition of the petitioner's appeal. On September 28, 1993, the petitioner entered a plea of nolo contendere to charges of risk of injury to a child in violation of General Statutes § 53-21 and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A). At the plea hearing, the petitioner was represented by attorney

John Watson. During the hearing, the court, *Thompson, J.*, thoroughly canvassed the petitioner, determined that his pleas were knowing, intelligent and voluntary and accepted them.[1] The court sentenced the petitioner to a suspended term of five years imprisonment with five years probation for the risk of injury conviction and a suspended sentence of one year with one year probation for the sexual assault conviction, to run concurrently with the suspended sentence and the term of probation

---

[1] The transcript of the plea canvass reveals the following:

"The Court: You have discussed these two charges with Mr. Watson?

"[The Petitioner]: Yes.

"The Court: Has he explained to you what the state would have to prove in order for you to be found guilty of the charges?

"[The Petitioner]: Yes.

"The Court: You have done that, Mr. Watson?

"[The Petitioner's Counsel]: Yes, Your Honor.

"The Court: The risk of injury charge is a felony, and the maximum sentence for which is [ten] years and, or, a $500 fine.

"The sexual assault fourth degree is a misdemeanor, maximum sentence for which is one year and, or, a $2000 fine.

"If those two sentences were . . . to run one after the other, of course, the total would be [eleven] years. That's the maximum exposure that you would face on these two charges. Do you understand that?

"[The Petitioner]: Yes.

"The Court: You do have the right to plead not guilty and to continue to plead not guilty and have a trial before a judge or jury with the assistance of your attorney, the right to confront and cross-examine witnesses against you, the right to testify yourself and present any defense you wish, if you choose.

"You also have the right not to incriminate yourself. Do you understand you have those rights?

"[The Petitioner]: Yes.

"The Court: Are you entering this plea of your own free will?

"[The Petitioner]: Yes.

"The Court: Have any threats or promises been made to cause you to plead guilty other than this plea bargain agreement?

"[The Petitioner]: No.

"The Court: Are you satisfied with the advice you have received from counsel?

"[The Petitioner]: Yes. . . .

"The Court: The pleas are found to be made knowingly and voluntarily with effective assistance of competent counsel. . . . Finding of guilty on each charge . . . ."

for the risk of injury sentence. As a condition of probation, the petitioner was required to undergo sex offender screening, evaluation and treatment and was referred to a treatment program for that purpose.

On November 4, 1996, a hearing was held on the allegation that the petitioner had violated his probation. At this hearing, the petitioner was represented by attorney Scott M. Jones. At the opening of the hearing, Jones reiterated a request for a continuance that he had made earlier. Jones stated that he was requesting the continuance because he had not received "certain documents that were necessary in order to effectuate pretrial in this matter . . . ." Jones stated that there were documents from the treatment program relating to the petitioner's participation in the program that he had only just received the morning of the hearing and had not been able to review. The prosecutor stated that these materials had been in his office since September 20, 1996, but neither Jones nor the petitioner's previous counsel had requested them. The prosecutor also offered a letter from the treatment program stating that the materials had been sent to the public defender's office, where Jones was employed, on June 21, 1996. Jones responded that he had only taken over the petitioner's case on October 10, 1996, and did not speak with the petitioner until October 28, 1996. Jones also stated that the materials were not present in the file that had been left for him by the petitioner's previous counsel. The court, *Clark, J.*, denied the request for a continuance.

Jones renewed his continuance request once more during the hearing and again at the close of the hearing. Judge Clark did not grant the requests but did allow Jones the opportunity to recall, at a later date, a witness who had testified about the petitioner's experience with

the treatment program.[2] The court found by a preponderance of the evidence that the petitioner had violated his probation and sentenced him to incarceration for the balance of his term, which was five years.

The petitioner filed an amended petition for a writ of habeas corpus on July 14, 2006. The amended petition alleged actual innocence, ineffective assistance of trial counsel at the plea hearing, ineffective assistance of counsel at the violation of probation hearing and an improper plea canvass. Following a hearing, Judge Zoarski denied the petition on June 5, 2007, in a written decision. The court found that the petitioner failed to carry his burden of proving actual innocence, that the plea canvass complied with the requirements of Practice Book §§ 39-18 through 39-22 and that the "[p]etitioner entered the pleas knowingly and voluntarily with the effective assistance of competent counsel." The court also denied the petitioner's claims of ineffective assistance of counsel. The court concluded that "[t]he evidence presented does not establish ineffective assistance of counsel" and "fails to prove that the alleged lack of competency contributed significantly to deprive the [p]etitioner [of] the right to a fair trial." On June 19, 2007, the court granted certification to appeal. Additional facts will be set forth as necessary.

We begin with the standards that govern our analysis of the petitioner's appeal. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the

---

[2] At a later *Anders* hearing on March 27, 1997, Jones stated that the documents would not have been helpful because they contained inculpatory rather than exculpatory information. See *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (setting forth proper procedure for counsel and court when counsel believes appeal would be frivolous). The documents were not introduced at the habeas hearing.

representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Mitchell v. Commissioner of Correction,* 109 Conn. App. 758, 762, 953 A.2d 685, cert. denied, 289 Conn. 950, 961 A.2d 417 (2008).

"To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment [to the United States constitution]. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction,* 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz,* 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified *Strickland*'s prejudice prong. . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was

not within the range of competence demanded of attorneys in criminal cases. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome. . . . The *Hill* court noted that [i]n many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 721–23, 789 A.2d 1046 (2002).

Because the petitioner must meet both prongs to prevail, a finding in favor of the respondent, the commissioner of correction, on either prong will defeat the action. See *Dawson* v. *Commissioner of Correction*, 106 Conn. App. 614, 624 n.10, 942 A.2d 519, cert. denied, 287 Conn. 909, 950 A.2d 1285 (2008). The petitioner's claim regarding the violation of probation hearing is subject to the *Strickland* test, and his claim regarding the plea hearing is subject to *Strickland* as modified by *Hill*.

I

We first examine the petitioner's claim that the court improperly concluded that his counsel at the plea hearing, Watson, did not render effective assistance. The petitioner claims that Watson rendered ineffective assistance by failing to investigate the petitioner's claims of innocence, failing to investigate the petitioner's "competence to knowingly and voluntarily enter pleas of nolo contendere," and failing to "ensure [that] the [p]etitioner understood the consequences of his pleas," in violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. We disagree.

The petitioner first claims that Watson failed to investigate fully the petitioner's claims of innocence. Specifically, the petitioner argues that Watson "admitted that there were several potential witnesses who were never even interviewed." Even if we assume arguendo that Watson's failure to interview these potential witnesses fails the performance prong of *Strickland,* the petitioner fails to present any evidence showing that these potential witnesses would have provided information that would have caused him not to enter the plea. The petitioner merely identifies individuals who were not interviewed by Watson but does not state what they would have testified about or whether their testimony would have had a favorable impact on the outcome of the trial, had it reached that point. "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." *Holley* v. *Commissioner of Correction,* 62 Conn. App. 170, 175, 774 A.2d 148 (2001). "Mere conjecture and speculation are not enough to support a showing of prejudice." *Burke* v. *Commissioner of Correction,* 90 Conn. App. 370, 378, 877 A.2d 885, cert. denied, 275 Conn. 926, 883 A.2d 1241 (2005). Because the petitioner failed to prove what the potential witnesses would have testified about

or what impact their testimony would have had on the outcome of the trial,[3] we agree with the court that this claim of ineffective assistance must fail. See, e.g., *Ostolaza* v. *Warden*, 26 Conn. App. 758, 766–67, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992); see also *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 321, 759 A.2d 118 (2000).

The petitioner next claims that Watson rendered ineffective assistance by failing to investigate the petitioner's competence knowingly and voluntarily to enter a plea of nolo contendere. The petitioner argues that he "would not have pleaded nolo contendere and would have gone to trial" if Watson had not failed to investigate the petitioner's competence. The petitioner alleges that he was seeing a therapist during the period leading to the plea and believed that he was suffering a " 'mental breakdown' " caused by the stress of defending against the charges. As a result of this " 'agony,' " the petitioner alleges that "he was not able to understand the court proceedings."

The petitioner's claim fails to meet the prejudice prong. See *Hill* v. *Lockhart*, supra, 474 U.S. 59. The petitioner did not introduce any treatment records into evidence at the habeas hearing. At the habeas hearing, Watson testified that he questioned the petitioner about his mental health and determined that he "did not have concerns about his competency." Watson also testified that he had had experiences in the past in which he had ordered a competency evaluation of a client, but on the basis of his evaluation of the petitioner, he did not believe that such action was necessary. The petitioner provides no evidence to support his argument that had Watson investigated his competency further, he would

[3] Jackie Simms was identified as one of these potential witnesses and was called as a witness at the habeas trial. Her testimony provided nothing helpful to the petitioner.

have decided not to enter a plea of nolo contendere. We conclude that the petitioner has not provided us with a record showing a reasonable probability that he would have chosen to proceed to trial rather than enter a plea of nolo contendere if his counsel had further investigated the petitioner's physical and mental health immediately prior to the plea proceedings. See *Hunnicutt* v. *Commissioner of Correction*, 83 Conn. App. 199, 210, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004).

The petitioner next claims that Watson failed to ensure that the petitioner understood the consequences of the plea. Specifically, the petitioner alleges that Watson "failed to advise [p]etitioner that a nolo plea would result in a felony conviction just like a guilty plea and that the felony conviction would be on his record forever, with all the attendant legal consequences." At the habeas hearing, when asked what he understood about the ramifications of his plea, the petitioner testified that he "was very confused" and "very much emotional about the whole matter . . . ."

At the plea hearing, however, the petitioner responded in the affirmative to Judge Thompson's canvass, which asked him whether he was entering the plea of his free will and whether he was satisfied with the advice received from his attorney.[4] At the conclusion of the canvass, the court found the pleas "to be made knowingly and voluntarily with effective assistance of counsel." The court then entered a finding of "guilty on each charge" and the petitioner did not object. At the habeas hearing, Watson testified that although he did not remember the specifics of his discussion of the plea agreement with the petitioner, he "definitely would have had those conversations" with

---

[4] See footnote 1.

the petitioner, and "there would have been a conversation about that before it was done." Also during testimony at the habeas hearing, the petitioner stated: "I know I didn't want to take the risk or gamble my freedom . . . which is why I just went on a plea bargain."

"A court may properly rely on . . . the responses of the [petitioner] at the time [he] responded to the trial court's plea canvass . . . ." (Internal quotation marks omitted.) *Carey* v. *Commissioner of Correction*, 86 Conn. App. 180, 185, 860 A.2d 776 (2004), cert. denied, 272 Conn. 915, 866 A.2d 1283 (2005).[5] It is appropriate to presume that in most cases counsel routinely explains the consequences of a plea agreement. See *State* v. *Stith*, 108 Conn. App. 126, 133, 946 A.2d 1274, cert. denied, 289 Conn. 905, 957 A.2d 874 (2008). The record before us does not contain any positive suggestion that the petitioner was not given notice of what he was admitting in his plea. On the basis of the trial court's canvass and its finding of guilty at the plea hearing, without objection by the petitioner, as well as Watson's testimony at the habeas hearing, we conclude that the habeas court's conclusions were not improper.

II

We next examine the petitioner's claim that his counsel at the violation of probation hearing, Jones, rendered

[5] In a related area, our Supreme Court has stated that the court need not advise a defendant of every possible consequence of a plea. "Although a defendant must be aware of the direct consequences of a plea, the scope of direct consequences is very narrow. . . . In Connecticut, the direct consequences of a defendant's plea include only the mandatory minimum and maximum possible sentences . . . the maximum possible consecutive sentence . . . the possibility of additional punishment imposed because of previous conviction(s) . . . and the fact that the particular offense does not permit a sentence to be suspended. . . . The failure to inform a defendant as to all possible indirect and collateral consequences does not render a plea unintelligent or involuntary in a constitutional sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, 253 Conn. 497, 504–505, 752 A.2d 49 (2000).

ineffective assistance. The petitioner claims that Jones rendered ineffective assistance of counsel because he was unprepared for the hearing, did not investigate whether the petitioner had a potential fifth amendment claim and failed to ensure that the petitioner understood what was needed to obtain sentence review or to prosecute an appeal. We disagree.

The following additional facts are necessary for our resolution of the petitioner's claim. After the petitioner's probation was revoked, Jones filed an *Anders* brief[6] in support of his motion to withdraw as the petitioner's counsel on the ground that there were no appealable issues. The court, *Comerford, J.*, granted Jones' motion to withdraw and found that there were no appealable issues. At the hearing on the motion to withdraw, the court stated that "[t]he only issue that gave the court pause was . . . the disclosure of the [treatment program materials] at or about the time of the violation of probation hearing" but that "[o]nce those documents were, in fact, produced, it is evident that these documents contained more inculpatory matter than exculpatory matter."

The petitioner first claims that Jones was unprepared for the violation of probation hearing because he was unfamiliar with the petitioner's case and did not have adequate time to review the materials relating to the petitioner's time in the sex offender treatment program. We are not persuaded.

For the petitioner to succeed on his claim, he must show that both the performance and the prejudice prongs of the *Strickland* test are met. See *Strickland* v. *Washington*, supra, 466 U.S. 687. Without analyzing whether the performance prong was met,[7] it is clear

---

[6] See footnote 2.

[7] "Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong

that the court properly concluded that the petitioner did not meet his burden of proving the prejudice prong. To satisfy the prejudice prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction,* supra, 286 Conn. 713. Here, the record does not reveal that had Jones had more time to prepare for the hearing or, more specifically, to review the materials from the treatment program, the result would have been different. Judge Comerford found that the materials were inculpatory rather than exculpatory. The petitioner also argues that additional time would have allowed Jones to investigate further the circumstances surrounding the petitioner's termination from the treatment program and that additional time would have allowed Jones to negotiate more favorable terms for the petitioner after his probation was revoked. Again, however, the petitioner fails to present any evidence to demonstrate that the result would have been different if Jones had had more time; at the *Anders* hearing, Jones testified that the materials would not have helped.

The petitioner next claims that Jones rendered ineffective assistance in that he failed to investigate whether the petitioner had a fifth amendment claim. The petitioner argues that Jones should have investigated whether the sexual offender treatment program requirement that participants admit their guilt violated the right against self-incrimination guaranteed by the fifth amendment to the United States constitution. This claim, that Jones failed to investigate a fifth amendment claim in particular, was not raised in the amended petition or in the posttrial brief and, as a result, was not

will be dispositive of the ineffectiveness claim." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction,* 101 Conn. App. 133, 136, 921 A.2d 128, cert. denied, 283 Conn. 905, 927 A.2d 916 (2007).

ruled on by Judge Zoarski. Judge Zoarski did address a claim that both Jones and Watson failed to perform an adequate investigation but did not address any claim that an adequate investigation should have yielded a fifth amendment claim. It is well settled that this court does not consider claims not raised in the habeas court. Practice Book § 60-5; *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). Accordingly, we decline to review this claim.

The petitioner's final claim is that Jones rendered ineffective assistance of counsel in that he failed to ensure that the petitioner understood what was needed to obtain sentence review or to prosecute an appeal. We decline to review this claim because it was not raised sufficiently in the habeas court. The court made no finding as to whether Jones rendered ineffective assistance by failing to prepare the petitioner for appeal. Rather, the court's ruling is limited to the broad allegation concerning Jones' "failure to investigate," to which the court concluded that "[t]he evidence presented does not establish ineffective assistance of counsel." The only other conclusion the court reached regarding Jones' performance as counsel was that he provided "a competent representation in examining the various witnesses presented by the [s]tate."

Our case law consistently has held that we are not bound "to consider claimed errors unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Copeland* v. *Warden*, supra, 26 Conn. App. 13–14. Our Supreme Court only recently reiterated its affirmation of this case law. See *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 580, 941 A.2d 248 (2008). In the present case, the court made no findings or rulings with respect to the alleged facts or merits of

this claim. The petitioner filed no motion for articulation to supplement the habeas record. We decline to consider this claim.

The judgment is affirmed.

In this opinion the other judges concurred.