## SHAWN CROCKER *v.* COMMISSIONER OF CORRECTION
## (AC 30786)

Bishop, Harper and West, Js.

Argued September 22, 2010—officially released January 18, 2011

*Mark M. Rembish*, special public defender, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, Shawn Crocker, appeals from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. On

appeal, he claims that the court improperly concluded that he had not been denied effective assistance of counsel when his habeas counsel failed: (1) to raise claims of ineffective assistance of his trial and appellate counsel, (2) to raise a claim that the prosecution did not disclose exculpatory evidence, (3) to investigate potentially exculpatory information and (4) to raise a claim that the petitioner's second criminal trial constituted a violation of the double jeopardy clause of the fifth amendment to the United States constitution.[1] We affirm the judgment of the habeas court.

The relevant facts and procedural history surrounding the petitioner's conviction were set forth by this court in our decision affirming the denial of his first petition for habeas relief. See *Crocker* v. *Commissioner of Correction*, 101 Conn. App. 133, 134–35, 921 A.2d 128, cert. denied, 283 Conn. 905, 927 A.2d 916 (2007). "Shortly before 7:30 p.m. on October 27, 1997, George David Wright drove a stolen Jeep Cherokee to the Quinnipiac Terrace housing complex in New Haven, also known as the Island. The victim, Daryl Price, was in the passenger seat of the Jeep, and Calvin Taylor was seated in the back. At the housing complex, Wright and Taylor exited the vehicle, and Tacuma Grear approached the Jeep to talk to the victim. They talked about the [fatal shooting] of Grear's brother, Corey Grear [by the victim], which had occurred approximately one week earlier, for which the victim . . . apologized. Corey Grear was a friend of the [petitioner], and the [petitioner] had held [Corey Grear] in his arms after [Corey] Grear was fatally shot by the victim. The [petitioner] had witnessed the victim shoot Corey Grear. Corey Grear was also a member, as was the [petitioner], of the Island Brothers, a street gang into

[1] See *Oregon* v. *Kennedy*, 456 U.S. 667, 671, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) ("[t]he Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense").

which the victim had been introduced and sponsored by the [petitioner]. As his sponsor, the [petitioner] was responsible for disciplining the victim should the victim kill a fellow gang member. As Tacuma Grear walked away from the Jeep, the [petitioner] had come up to the driver's side of the Jeep carrying a handgun. He then leaned into the Jeep and fired four times into the vehicle. Two .45 caliber bullets hit the victim, killing him, and two other bullets were found in the Jeep. . . . After a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a and criminal possession of a firearm in violation of General Statutes § 53a-217." (Citation omitted; internal quotation marks omitted.) Id., 134–35.

After his conviction, the petitioner filed a direct appeal with this court, and we affirmed the conviction. See *State* v. *Crocker*, 83 Conn. App. 615, 852 A.2d 762, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). At all times during his direct appeal, the petitioner was represented by attorney Adele V. Patterson. Id.

"Following his unsuccessful appeal, the petitioner filed an amended petition for a writ of habeas corpus, alleging, inter alia, ineffective assistance of his trial counsel, Leo Ahern, who had represented the petitioner throughout his first criminal trial, which resulted in a mistrial, and then again in his second trial." *Crocker* v. *Commissioner of Correction*, supra, 101 Conn. App. 135. In the first habeas trial, the petitioner claimed that Ahern rendered ineffective assistance by failing to object to the admission of the transcript testimony of Travis Jenkins, which was elicited during the petitioner's first criminal trial and that he failed to investigate or to obtain evidence prior to the start of the second criminal trial. See id., 134, 138. The petitioner argued that Jenkins' testimony was inadmissible because he was unavailable for cross-examination at the second criminal trial. See id., 138.

At the conclusion of his first habeas trial, the court rejected the petitioner's claims of ineffective assistance of counsel, and this court affirmed that judgment. Id., 144. In that appeal, we concluded that the petitioner had failed to demonstrate that "there [was] a reasonable probability that, but for the admission of the Jenkins transcript, the result of the trial would have been different."[2] See id., 141.

On June 21, 2007, the petitioner filed a third amended petition for a writ of habeas corpus, claiming, on this occasion, that his first habeas counsel, attorney Genevieve Salvatore, rendered ineffective assistance.[3] Specifically, he claimed, inter alia, that Salvatore rendered ineffective assistance by failing: (1) to raise various claims of ineffective assistance of the petitioner's trial and appellate counsel, (2) to investigate potentially exculpatory information, (3) to raise a claim that the prosecution did not disclose exculpatory evidence and (4) to raise a claim that the petitioner's second criminal trial violated double jeopardy.

In that habeas trial, which is the subject of this appeal, the court, *A. Santos, J.,* heard testimony from the petitioner, Salvatore and Detective Richard Pelletier of the New Haven police department. In particular, Salvatore was questioned extensively regarding her representation of the petitioner during his first habeas trial. On January 26, 2009, the court, by way of a twenty page memorandum of decision, denied the petitioner's

---

[2] In that appeal, we noted that the Jenkins transcript was not particularly strong evidence for the state, given that it contradicted a previous statement that he had given to the police in which he identified the petitioner as the person who shot the victim. See *Crocker* v. *Commissioner of Correction,* supra, 101 Conn. App. 139. Additionally, we concluded that the state presented a significant amount of other probative evidence regarding the petitioner's guilt. See id., 140; see also part I A of this opinion.

[3] The petitioner was represented by attorney Joseph Visone during his second habeas trial and is currently represented by attorney Mark M. Rembish on appeal.

claims of ineffective assistance of counsel. This appeal followed. Additional facts will be set forth as necessary.

In reviewing claims that are based on ineffective assistance of counsel, we begin by setting forth the familiar and well settled standard of review articulated by the United States Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008). "The first prong is satisfied by proving that counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the sixth amendment. The second prong is satisfied if it is demonstrated that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Russell* v. *Commissioner of Correction*, 49 Conn. App. 52, 53, 712 A.2d 978, cert. denied, 247 Conn. 916, 722 A.2d 807 (1998), cert. denied sub nom. *Russell* v. *Armstrong*, 525 U.S. 1161, 119 S. Ct. 1073, 143 L. Ed. 2d 76 (1999).

" '[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that one or both of the prior habeas counsel, in

presenting his claims, was ineffective and that *effective* representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . .' *Harris* v. *Commissioner of Correction*, 108 Conn. App. 201, 209–10, 947 A.2d 435, cert. denied, 288 Conn. 911, 953 A.2d 652 (2008). Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice: he must 'prove both (1) that his appointed habeas counsel was ineffective, *and* (2) that his trial counsel was ineffective.' . . . Id., 842; see also *Denby* v. *Commissioner of Correction*, 66 Conn. App. 809, 812–13, 786 A.2d 442 (2001), cert. denied, 259 Conn. 908, 789 A.2d 994 (2002)." (Emphasis altered.) *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 394–95, 966 A.2d 780 (2009).

"Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim." (Internal quotation marks omitted.) *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 11–12, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

We will now address each of the petitioner's claims of ineffective assistance individually, cognizant that his claims regarding previous habeas counsel will not succeed if the claims of ineffective assistance of trial counsel lack merit. See *Lapointe* v. *Commissioner of Correction*, supra, 113 Conn. App. 395. On appeal, the petitioner asserts, inter alia, that the court improperly

concluded that attorney Salvatore did not render ineffective assistance. Under this rubric, the petitioner raises eight issues. We will address each of these issues in turn.

## I

Under the first set of issues put forth by the petitioner, he claims that Salvatore rendered ineffective assistance by failing to raise claims of ineffective assistance of trial and appellate counsel. We disagree.

## A

The petitioner's first argument within this set of issues asserts that Ahern provided ineffective assistance for failing to object to the out-of-court photographic identification of the petitioner offered through the testimony of Detective William Piascyk of the New Haven police department. Specifically, the petitioner argues that because the identifying witness, Jenkins, was unavailable for cross-examination at the second criminal trial, any extrajudicial identification of the petitioner provided by him is prohibited by our Supreme Court's holding in *State* v. *Outlaw*, 216 Conn. 492, 582 A.2d 751 (1990).[4]

The following additional facts are relevant to our resolution of the petitioner's claim. During the petitioner's second criminal trial, Jenkins was unavailable to testify. Thereafter, the court admitted into evidence the

---

[4] In *State* v. *Outlaw*, supra, 216 Conn. 496–97, our Supreme Court held that it was improper, under *State* v. *McClendon*, 199 Conn. 5, 10, 505 A.2d 685 (1986), for a police officer testifying at trial to corroborate an out-of-court identification made by an unavailable witness if the declarant of that identification was not available for cross-examination or if the declarant had not been exposed at trial to "cross-examin[ation] about his previous identification of the defendant from the photographic array." *State* v. *Outlaw*, supra, 498. We take no position on the issue presented under *Outlaw* because we determine that our analysis of the petitioner's ineffective assistance claim under the prejudice prong of *Strickland* is dispositive. See *Pierce* v. *Commissioner of Correction*, supra, 100 Conn. App. 11–12.

transcript of Jenkins' testimony from the petitioner's first criminal trial.[5] See *Crocker v. Commissioner of Correction*, supra, 101 Conn. App. 138. The transcript of Jenkins' direct and cross-examination from the petitioner's first criminal trial provided a version of the events different from what he originally had told Piascyk during their initial interview. During that interview, Jenkins identified the petitioner from a photographic array and told police that he had witnessed the petitioner shoot the victim. See id., 139. At the petitioner's first criminal trial, however, he recanted these statements and gave equivocal testimony with respect to his identification of the petitioner from the photographic array.[6] See id., 139–40. After the transcript was admitted

---

[5] As we noted during the petitioner's first habeas appeal, "[t]he [trial] court made a finding that the state had established, pursuant to § 8-6 of the Connecticut Code of Evidence and the common law, that Jenkins was unavailable to testify. The court then admitted into evidence Jenkins' testimony from the petitioner's first [criminal] trial and permitted Ahern to preserve any objections he may have had as to the content of the testimony. After a recess in order to permit Ahern to review the transcript, the court asked him if he had any comments on the substance of the transcript, and he responded that he did not. After the state rested, and while the petitioner was presenting his case, the state informed the court that Jenkins was present. Ahern objected to the state's opening its case and calling Jenkins to testify, and the court sustained the objection." *Crocker* v. *Commissioner of Correction*, supra, 101 Conn. App. 138–39.

During his first habeas appeal to this court, the petitioner claimed that Ahern had provided ineffective assistance by objecting to the state's opening of its case in order to permit Jenkins to testify. Id., 139. During the first habeas trial, Ahern testified that he did not want Jenkins to testify because although he believed that Jenkins had been somewhat cooperative when he testified at the first criminal trial, he did not want to risk Jenkins' giving potentially damaging live testimony, regardless of the evidence presented by the prosecution. Id.

In that appeal, we took no position as to whether Jenkins' transcript was admitted properly as a prior inconsistent statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), because we determined that the petitioner's failure to satisfy the prejudice prong of *Strickland* was dispositive. See *Crocker* v. *Commissioner of Correction*, supra, 101 Conn. App. 138 n.1, 139 n.2.

[6] On direct examination by the state, Jenkins testified that after he was shown a photographic array at the police station, he signed his name under

into evidence, the prosecution called Piascyk to the witness stand. Piascyk testified that prior to Jenkins' giving his written statement identifying the petitioner as the person who had shot the victim, Jenkins was shown a photographic array from which he also identified the petitioner. The petitioner now argues that Ahern's failure to object to this testimony resulted in ineffective assistance.[7]

In its memorandum of decision, the court found that neither Ahern nor Salvatore provided ineffective assistance by not challenging Piascyk's testimony, which included Jenkins' extrajudicial identification of the petitioner from the photographic array, under *State* v. *Outlaw*, supra, 216 Conn. 492. The court also found that "even if deficient performance were to be presumed, the petitioner [could not] establish prejudice" because the identification of him by Jenkins was already admitted into evidence prior to Piascyk's testimony regarding the photographic array.

We agree with the habeas court that the petitioner failed to establish prejudice under *Strickland*.[8] As the

a photograph of the petitioner. Jenkins was then asked by the prosecutor: "Did you sign that photograph to identify the person you saw shooting [the victim] on October 27, 1997?" Jenkins responded: "No, sir." During cross-examination, the following exchange occurred between Jenkins and Ahern:

"Q. But just so we all understand your testimony, did you sign that photograph because the police pointed it out or wanted you to sign it?

"A. Wanted me to sign.

"Q. And did you in fact sign that photograph at their behest or direction?

"A. Yes, sir."

[7] During the second habeas trial, Salvatore testified that she could not recall having raised the issue of whether Piascyk's testimony should have been objected to, nor could Salvatore recall having been familiar with *State* v. *Outlaw*, supra, 216 Conn. 492.

[8] Because we conclude that the petitioner has failed to satisfy the prejudice prong under *Strickland*, we need not determine whether Ahern or Salvatore rendered ineffective assistance by failing to object or to raise a claim regarding Piascyk's testimony under *State* v. *Outlaw*, supra, 216 Conn. 492. See *Crocker* v. *Commissioner of Correction*, supra, 101 Conn. App. 139 n.2.

court correctly concluded, Jenkins' testimony identifying the petitioner from the photographic array had already been admitted into evidence through the transcript. Consequently, Piascyk's testimony appears duplicative of evidence that had already been presented to the jury, namely, that Jenkins identified the petitioner from a photographic array. This testimony merely served to supplement the transcript testimony and did not prejudice the petitioner. See *Jeffrey* v. *Commissioner of Correction*, 36 Conn. App. 216, 223, 650 A.2d 602 (1994) (no prejudice to petitioner when jury presented with evidence that was substantially same); *Schnabel* v. *Tyler*, 32 Conn. App. 704, 712, 630 A.2d 1361 (1993) ("[e]vidence that 'was simply cumulative and supplementary' to the other evidence admitted during the course of the trial is unlikely to have an effect on the jury"), aff'd, 230 Conn. 735, 646 A.2d 152 (1994); cf. *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 124 Conn. App. 415, 424, 4 A.3d 1268 (2010) (reversal not required when improperly admitted evidence is merely cumulative of properly admitted evidence); *State* v. *Rosedom*, 34 Conn. App. 141, 147, 640 A.2d 634 (1994) (virtually identical evidence unlikely to have prejudicial effect on jury).

Moreover, Piascyk's testimony was far from the only evidence linking the petitioner to the murder. The state also introduced other significant evidence that was probative of the petitioner's guilt. See *Crocker* v. *Commissioner of Correction*, supra, 101 Conn. App. 140 (admission of Jenkins transcript nonprejudicial in light of other probative evidence presented by state). Based on the foregoing, the petitioner has failed to demonstrate that there was a reasonable probability that, but for Piascyk's testimony, the result of the trial would have been different. Accordingly, the petitioner has failed to satisfy the prejudice prong of *Strickland*.[9] See *Strickland* v. *Washington*, supra, 466 U.S. 694–96.

---

[9] The petitioner also claims that the court improperly concluded that Salvatore did not render ineffective assistance when she did not raise a

B

The petitioner next argues that Salvatore rendered ineffective assistance by failing to claim that Ahern's performance was deficient for failing to object to the admission into evidence of a tape-recorded statement by Tacuma Grear. Specifically, the petitioner claims that Tacuma Grear's 1998 tape-recorded statement to police was unreliable in light of his previous inconsistent statements at the petitioner's probable cause hearing and, thus, was inadmissible under *State* v. *Whelan*, 200 Conn. 743, 753–54, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).[10]

claim of ineffective assistance regarding Ahern's failure to object to the admission into evidence of a map drawn by Piascyk and Jenkins. We disagree.

The following additional facts aid our discussion. At the petitioner's second criminal trial, the state admitted into evidence a sketched map of the crime scene drawn by Piascyk under Jenkins' direction during the same interview in which Jenkins identified the petitioner as the man who shot the victim. The map was admitted as an exception to the hearsay rule for business records.

As we concluded in part I A of this opinion, the jury had already been exposed to Jenkins' testimony, in which he identified the petitioner as the man who shot the victim. In his testimony, Jenkins also admitted to collaborating with Piascyk to draw a map of the crime scene. Therefore, we cannot conclude that a diagram illustrating what Jenkins already described in his testimony would have created reasonable doubt for the jury regarding the guilt of the petitioner. See part I A of this opinion; *Jeffrey* v. *Commissioner of Correction*, supra, 36 Conn. App. 223 (petitioner not prejudiced when substantially same evidence placed before jury). Accordingly, we conclude that the petitioner's claim fails to satisfy the prejudice prong under *Strickland*. See *Strickland* v. *Washington*, supra, 466 U.S. 694–96.

As a result of having concluded that the petitioner has failed to demonstrate prejudice under *Strickland*, we need not determine whether Ahern rendered ineffective assistance for not raising an objection to the admission of the map under the business record exception to the hearsay rule. See *Pierce* v. *Commissioner of Correction*, supra, 100 Conn. App. 12 n.5.

[10] In *Whelan*, our Supreme Court carved out an exception to the hearsay rule regarding the admission of prior inconsistent statements into evidence for situations in which the statements possess an indicia of reliability and trustworthiness. See *State* v. *Whelan*, supra, 200 Conn. 752–53. The *Whelan* rule allows a prior inconsistent statement to be used as substantive evidence if it satisfies four requirements: (1) the prior inconsistent statement was in

The following additional facts are relevant to our resolution of the petitioner's claim. During the petitioner's probable cause hearing on December 23, 1997, Tacuma Grear testified that he was at the crime scene, and, although he heard gunshots and witnessed a person near the driver's side of the Jeep, he could not identify that person. See *State* v. *Crocker*, supra, 83 Conn. App. 620. On June 18, 1998, Tacuma Grear provided police with a tape-recorded statement, and this time he indicated that he had witnessed the petitioner at the crime scene leaning into the driver's side window of the vehicle and then simultaneously saw flashes coming from the petitioner's arm, heard gunshots and then saw the victim slumped in the seat of the vehicle.[11] At trial, a partial transcript of the 1998 tape-recorded statement was admitted as a prior inconsistent statement, and Tacuma Grear was cross-examined regarding its contents. The petitioner now claims that because Tacuma Grear had a motive for killing the victim and was fearful that he would be charged with the murder, the 1998 statement was rendered unreliable. We are not persuaded.

The habeas court found that the tape-recorded statement of Tacuma Grear fell under the exception to the hearsay rule for prior inconsistent statements articulated in *Whelan*. See footnote 10 of this opinion. Accordingly, the court concluded that Salvatore did not render ineffective assistance for not raising this claim as a result of there being little basis for an objection from Ahern.

writing; (2) the declarant signed the statement; (3) the declarant has personal knowledge of the statement; and (4) the declarant testified at trial and was subject to cross-examination. Id., 753. *Whelan* also explained that "prior tape recorded statements possess similar indicia of reliability and trustworthiness to allow their substantive admissibility as well." Id. 754 n.9.

[11] Tacuma Grear was in police custody after being arrested on an unrelated matter.

After a careful review of the record, we agree with the court and conclude that Tacuma Grear's 1998 tape-recorded statement satisfied all of the *Whelan* criteria and, thus, was sufficiently reliable to be admitted into evidence.[12] See *State* v. *Hart*, 118 Conn. App. 763, 783, 986 A.2d 1058 (statement that satisfies *Whelan* requirements is presumptively admissible absent strong showing that it is unreliable), cert. denied, 295 Conn. 908, 989 A.2d 604 (2010).

The petitioner argues that because Tacuma Grear's statement contradicted his previous testimony at the petitioner's probable cause hearing, both Ahern and Salvatore rendered ineffective assistance when they failed to challenge the testimony as being unreliable under *Whelan*. We find this argument to be unavailing. Inconsistent statements are precisely the type of substantive evidence that is allowed under the rule of *Whelan*. See *State* v. *Whelan*, supra, 200 Conn. 752. The fact that a statement, submitted under *Whelan*, may or may not be truthful does not diminish its reliability. See *State* v. *Mukhtaar*, 253 Conn. 280, 307, 750 A.2d 1059 (2000) (once statement satisfies *Whelan* requirements, "its credibility is grist for the cross-examination mill"). Because Tacuma Grear's statement satisfied the conditions precedent set forth in *Whelan*, we cannot conclude that counsels' failure to object to the statement or to raise the issue on habeas appeal constituted ineffective assistance.

Additionally, we are not persuaded by the petitioner's assertion that Tacuma Grear's statement was given

---

[12] The record reflects that Tacuma Grear's statement (1) was reliably recorded, (2) was authenticated by him during his testimony at trial, (3) showed that he possessed personal knowledge of its contents and (4) was subject to cross-examination regarding its contents during the petitioner's second criminal trial. See *State* v. *Crocker*, supra, 83 Conn. App. 623–24; see also *State* v. *Woodson*, 227 Conn. 1, 22, 629 A.2d 386 (1993) (trial witness' tape-recorded statement to police satisfied *Whelan* criteria).

under circumstances so unduly coercive or extreme as to render it unreliable. See id., 306. The petitioner argues that because Tacuma Grear testified that police threatened him with arrest if he did not implicate the petitioner, his statement was unreliable. Detective Frank Roberts of the New Haven police department, however, testified that during the interview with Tacuma Grear the tape recorder was never turned off and then on; Tacuma Grear was not told to implicate the petitioner in any way; Tacuma Grear was not threatened in any way; nor did Tacuma Grear appear to be under the influence of alcohol or drugs. Therefore, we agree with the court that this was hardly the unusual case in which a statement satisfies the requirements of *Whelan*, yet must be kept from the jury because it was deemed unduly coercive or extreme. See id., 307.

Based on the foregoing we cannot conclude that counsels' performance "fell below an objective standard of reasonableness" for failure to raise this claim. *Strickland* v. *Washington*, supra, 466 U.S. 668. Accordingly, the petitioner's claim fails to satisfy the first prong of *Strickland*. See id., 687–88.

C

The petitioner next argues that the court improperly concluded that his appellate counsel, Patterson, did not render ineffective assistance by failing to brief a claim of prosecutorial impropriety adequately. Specifically, the petitioner claims that the prosecutor improperly commented on his post-*Miranda*[13] silence during closing arguments in violation of *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).[14] We disagree.

[13] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[14] In *Doyle* v. *Ohio*, supra, 426 U.S. 610, the United States Supreme Court "held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of [warnings pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)] violates due process. . . . [I]t noted that silence in the wake of *Miranda* warnings

The following additional facts aid our discussion. On November 3, 1997, the petitioner voluntarily went to the New Haven police station to speak with Piascyk. Although the petitioner was not in custody, Piascyk read the petitioner his *Miranda* rights because he was the primary suspect in the murder investigation. After receiving those rights, the petitioner signed a form voluntarily waiving his right to remain silent and proceeded to answer the majority of Piascyk's questions. Thereafter, the petitioner informed Piascyk that he had several alibi witnesses who would attest to his innocence; however, when asked by Piascyk to identify the names of those alleged witnesses, he refused. Subsequently, at the petitioner's second criminal trial, the prosecutor argued during his closing remarks: "Remember, on November 3, 1997, [the petitioner] wouldn't even tell the police who his alibi witness[es] were [or] who was there . . . ."

On direct appeal, we declined to review this issue because we concluded that the petitioner had failed to brief the claim adequately. See *State* v. *Crocker*, supra, 83 Conn. App. 660. Although the petitioner continues to claim that the prosecutor's remarks were an improper comment on his post-*Miranda* silence, the claim is now advanced under the auspices of an ineffective assistance claim against Salvatore.

The habeas court concluded that the petitioner could not succeed on this claim because there was clearly no *Doyle* violation, and, consequently, the petitioner failed

is insolubly ambiguous and consequently of little probative value. Second and more important[ly], it observed that while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (Internal quotation marks omitted.) *State* v. *Bereis*, 117 Conn. App. 360, 373, 978 A.2d 1122 (2009).

to demonstrate prejudice under the second prong of *Strickland*.[15] We agree.

"It is axiomatic . . . that *Doyle* is not applicable when a defendant has waived his right to remain silent." *State* v. *Fluker*, 123 Conn. App. 355, 365, 1 A.3d 1216, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010). "While a defendant may invoke his right to remain silent at any time, even after he has initially waived his right to remain silent, it does not necessarily follow that he may remain 'selectively' silent." *State* v. *Talton*, 197 Conn. 280, 295, 497 A.2d 35 (1985). Furthermore, "[a] *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment upon a defendant's silence following a *Miranda* warning." (Internal quotation marks omitted.) *State* v. *Daugaard*, 231 Conn. 195, 212, 647 A.2d 342 (1994), cert. denied, 513 U.S. 1099, 115 S. Ct. 770, 130 L. Ed. 2d 666 (1995). "The cases wherein the error has been found to be prejudicial disclose repetitive references to the defendant's silence, reemphasis of the fact on closing argument, and extensive, strongly-worded argument suggesting a connection between the defendant's silence and his guilt." (Internal quotation marks omitted.) Id., 213.

By voluntarily choosing to sign a waiver form and, more importantly, answering questions, the petitioner unambiguously chose not to assert his right to remain silent. See *State* v. *Talton*, supra, 197 Conn. 295. Additionally, his behavior in alternating between speaking and not speaking was not an invocation of his right to remain silent. See id.

---

[15] Because we conclude that the petitioner has failed to satisfy the prejudice prong of *Strickland*, we need not determine whether Patterson's failure to brief this claim adequately constituted ineffective assistance. See *Crocker* v. *Commissioner of Correction*, 101 Conn. App. 139 n.2.

Therefore, we agree with the court's conclusion that the comments made by the prosecution did not constitute a violation under *Doyle*.[16] The petitioner, therefore, has failed to demonstrate, under the second prong of *Strickland*, that he was prejudiced by the prosecutor's comments. See *Strickland* v. *Washington*, supra, 466 U.S. 695–96. Accordingly, this claim fails.

II

We turn next to the petitioner's claim that Salvatore rendered ineffective assistance by failing to raise a claim that the state failed to disclose exculpatory evidence in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[17] Specifically, the petitioner argues that Tacuma Grear's testimony from *State* v. *Talton*, Superior Court, judicial district of New Haven, Docket No. CR-97-0446889-T (January 8, 1999), provided exculpatory evidence that would have impacted the decision in the petitioner's second criminal trial, and, thus, the state was required to disclose this evidence pursuant to *Brady*. We disagree.

---

[16] Even assuming that the prosecutor's remarks were improper, they were insignificant and isolated in comparison to the entire closing argument. Therefore, we agree with the court that the petitioner failed to prove prejudice regarding this claim.

[17] "In *Brady* v. *Maryland* [supra, 373 U.S. 87] the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material [either to guilt or to punishment]. . . . The United States Supreme Court . . . in *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), [held] that undisclosed exculpatory evidence is material, and that constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *State* v. *Falcon*, 90 Conn. App. 111, 120–21, 876 A.2d 547, cert. denied, 275 Conn. 926, 883 A.2d 1248 (2005).

The following additional facts aid our discussion. During the same period of time that the petitioner's second criminal trial was under way, Tacuma Grear also testified at the *Talton* trial.[18] His testimony in *Talton* identified "Slim Goodie" as Shawn Bethea, although at the petitioner's second criminal trial, Tacuma Grear identified the petitioner as "Slim Goodie." The habeas court resolved this discrepancy by noting that during his second habeas trial the petitioner explained that the surname "Bethea" comes from his mother's side of the family and that he is, in fact, known on the street as "Goodie" or "Slim Goodie." The court also noted that Tacuma Grear's taped statement to the police also identified the petitioner as Goody. Although Salvatore could not recall reviewing the *Talton* transcript specifically, she testified that it was her understanding that the petitioner had several street names and that raising a claim premised on the misidentification of these names was without merit because "Shawn Bethea and Shawn Crocker and Slim Goodie [were] all the same person." The habeas court found that Tacuma Grear's testimony in *Talton* did not contradict his later testimony, nor did it provide exculpatory evidence for the petitioner. Consequently, the court concluded that the state was not required to disclose Tacuma Grear's testimony under *Brady*, and, thus, the petitioner failed to demonstrate either deficient performance or prejudice.[19]

---

[18] The *Talton* trial also involved the prosecution of members of the gang associated with the Quinnipiac Terrace housing complex in New Haven, also known as "the Island." See *State* v. *Talton*, 63 Conn. App. 851, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001).

[19] The habeas court concluded that the petitioner was procedurally defaulted from pursuing this claim for having failed to file the requisite return as provided by Practice Book § 23-31. See Practice Book § 23-31. Relying on *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 40, 779 A.2d 80 (2001), the court concluded that the petitioner failed to satisfy the cause and prejudice components required to cure such a default. The court found that even if it presumed that the petitioner could show cause, he could not establish prejudice. We agree.

" 'Exculpatory' has been defined to mean '[c]learing or tending to clear from alleged fault or guilt; excusing.' Black's Law Dictionary (6th Ed. 1990)." *State* v. *Falcon*, 90 Conn. App. 111, 121, 876 A.2d 547, cert. denied, 275 Conn. 926, 883 A.2d 1248 (2005). "The rule laid out in *Brady* requiring disclosure of exculpatory evidence applies to materials that might well alter . . . the credibility of a crucial prosecution witness." (Internal quotation marks omitted.) Id., 122. In the present case, Tacuma Grear's testimony was already rife with inconsistencies. See part I B of this opinion. Moreover, his testimony from *Talton* appears to refer simply to the petitioner by one of his many street names. We agree with the court's conclusion that adding one more inconsistency, in which Tacuma Grear confusingly refers to the petitioner by a different street name, was immaterial to the petitioner's guilt and that it did not alter Tacuma Grear's credibility to a degree that mandated disclosure under *Brady*.

Accordingly, we agree with the court that there was no *Brady* violation in the present case and that the petitioner has failed to demonstrate either deficient performance or prejudice under *Strickland* as to this claim. See *Strickland* v. *Washington*, supra, 466 U.S. 688–90, 694–96.

### III

### A

The petitioner next claims that Salvatore rendered ineffective assistance in failing to investigate potentially exculpatory information. Specifically, he argues that both Salvatore and Ahern should have explored introducing statements given by Ernest Henry. The petitioner argues that Henry's purported statements to a private investigator would have challenged the reliability of Wright's testimony identifying the petitioner as

the perpetrator of the crime.[20] At the second habeas trial, Salvatore testified that she was aware of Henry's statements but made a tactical determination that they would not have been beneficial in the petitioner's habeas appeal. The habeas court agreed and found that Salvatore's decision not to make this claim was a strategic decision well within the range provided by reasonable professional assistance under *Strickland*. On appeal, the petitioner claims that the habeas court overlooked the benefits of raising such a claim when it rendered its decision. We disagree.

After our careful review of the record, we agree with the habeas court and conclude that the petitioner has not demonstrated that Salvatore's performance was "outside the wide range of professionally competent assistance" articulated in *Strickland*. See id., 690. In *Johnson* v. *Commissioner of Correction*, 222 Conn. 87, 96, 608 A.2d 667 (1992), our Supreme Court construed the performance prong of *Strickland*, stating that "[s]trategic choices made after thorough investigation of [the] law and facts relevant to plausible options are virtually unchallengeable . . . ." "[T]he [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* v. *Washington*, supra, 466 U.S. 689, quoting *Michel* v. *Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955). It is clear from the record that Salvatore considered bringing a claim using Henry's statement but ultimately concluded that

---

[20] Salvatore testified that she was aware of a statement that Henry had given to a private investigator in which he identified the shooter as short and stocky with no restrictions to his gait, whereas the petitioner is tall and slender and reportedly walked with a limp. Salvatore decided, however, that the remainder of Henry's statement contradicted what the petitioner had told her and, therefore, was potentially damaging to the case. Consequently, Salvatore opined that basing a claim on Henry's alleged statements was not worth the risk in order "to try and elicit one jewel . . . that maybe could help you."

the risk of relying on Henry's statement outweighed its benefit because it included information that might have inculpated the petitioner. See footnote 20 of this opinion. This decision by Salvatore "falls into the category of trial strategy or judgment calls that we consistently have declined to second guess." *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 868, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). Accordingly, the petitioner's claim fails. See *Strickland* v. *Washington*, supra, 688–90.

## B

The petitioner next claims that Salvatore was ineffective for failing to raise a claim that Ahern's performance was deficient by not preventing the testimony of Wright from being entered into evidence.[21] Specifically, the petitioner claims that Salvatore failed to investigate adequately evidence that would have illustrated Ahern's ineffective assistance regarding the admission of this testimony. The court concluded that the petitioner had abandoned this claim because (1) it was not addressed in his posttrial brief and (2) he failed to adduce evidence in support of the claim during the habeas trial. See *Wooten* v. *Commissioner of Correction*, 104 Conn. App. 793, 801, 936 A.2d 263 (2007) (claim deemed "abandoned because the petitioner failed to present any evidence in support of his position"), cert. denied, 289 Conn. 911, 957 A.2d 868 (2008). Although the petitioner now addresses the inadmissibility of Wright's testimony

---

[21] During the petitioner's second criminal trial, the transcript of Wright's testimony from the petitioner's probable cause hearing was admitted into evidence. See *State* v. *Crocker*, supra, 83 Conn. App. 646. The trial court found that Wright was unavailable pursuant to § 8-6 of the Connecticut Code of Evidence. Id. On direct appeal, we concluded that, not only was the admission of Wright's testimony sufficiently reliable to satisfy the requirements for an unavailable witness, as set forth in *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *State* v. *Crocker*, supra, 646–50; moreover, the testimony did not prejudice the petitioner. *State* v. *Crocker*, supra, 649–51.

in an ineffective assistance claim, he is, for all practical purposes, challenging the admissibility of Wright's testimony during the second criminal trial.[22] Having carefully reviewed the record, we agree with the court that the petitioner failed to adduce new evidence that would have supported his claim that Salvatore failed to investigate adequately evidence that would have ultimately rendered Wright's testimony unreliable.[23] See *State* v. *Crocker*, supra, 83 Conn. App. 650–51 (petitioner's adequate and full opportunity to cross-examine witness rendered testimony reliable). Accordingly, this claim fails.

## IV

We turn finally to the petitioner's claim that the court improperly concluded that Salvatore did not render ineffective assistance for failing to claim that his second criminal trial violated his rights pursuant to the double jeopardy clause of the fifth amendment to the United States constitution. Specifically, the petitioner asserts that Ahern failed to properly frame his motion to dismiss on the ground that the prosecutor's remarks at the close of the first criminal trial were a deliberate attempt to produce a mistrial. We disagree.

"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense." *Oregon* v. *Kennedy*, 456

[22] The court also concluded that, because the claim regarding the admissibility of Wright's testimony had been addressed on direct appeal, it was precluded from considering the claim. See footnote 21 of this opinion.

[23] In his brief, the petitioner cursorily argues that Salvatore did not give a logical reason why this claim was not raised during his first habeas appeal. Our review of the transcript from the second habeas trial, however, reveals that Salvatore did give a tactical reason for not raising the issue and that she was aware that Wright's account of what the petitioner was wearing differed somewhat from what the petitioner claimed he was wearing on the night of the murder. In her testimony, Salvatore stated that she had advised the petitioner that, in her opinion, his testimony effectively "nullified other people's testimony" because there were so many conflicting versions of the events regarding the petitioner that were introduced at trial.

U.S. 667, 671, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). " '[A] trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which [the defendant] was subjected.' *Richardson* v. *United States*, 468 U.S. 317, 326, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984)." *State* v. *James*, 247 Conn. 662, 674, 725 A.2d 316 (1999).[24] The United States Supreme Court, however, has carved out a narrow exception to this rule for cases in which it is determined that the prosecutor "intended to provoke the defendant into moving for a mistrial." (Internal quotation marks omitted.) *State* v. *Butler*, 262 Conn. 167, 175, 810 A.2d 791 (2002), quoting *Oregon* v. *Kennedy,* supra, 679.

The habeas court clearly concluded that "[t]he record reveals beyond dispute that the petitioner's original criminal trial resulted in a mistrial due to a hung jury." Moreover, the court also addressed the petitioner's claim that Ahern was ineffective for failing to include deliberate prosecutorial inducement of a mistrial in his original motion to dismiss. Although the petitioner asserts broadly that the state initiated a mistrial because it was aware that the first trial was not going well, he has failed to offer evidence that the prosecutor in the first trial *intended to produce a mistrial.* Based on the habeas court's findings and the petitioner's own dearth of evidence regarding any prosecutorial intent to produce a mistrial, we conclude that the petitioner's claim is without merit. See *Lewis* v. *Commissioner of Correction,* supra, 89 Conn. App. 861 (petitioner's failure to produce evidence to support claims resulted in failure to demonstrate prejudice under *Strickland*).

Accordingly, we conclude that the petitioner's claim is without merit. On the basis of the foregoing, his ineffective assistance claim against Salvatore is unavailing and fails under both prongs of *Strickland.* See

---

[24] The petitioner's first trial ended in a mistrial as a result of a hung jury.

*Strickland* v. *Washington,* supra, 466 U.S. 687; see also *Moore* v. *Commissioner of Correction,* 119 Conn. App. 530, 542, 988 A.2d 881 (failure to present meritorious claim does not establish deficient performance), cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010); *Lewis* v. *Commissioner of Correction,* supra, 89 Conn. App. 862.

The judgment is affirmed.

In this opinion the other judges concurred.