******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RON HALL *v.* COMMISSIONER OF CORRECTION
(AC 35097)

DiPentima, C. J., and Lavine and Flynn, Js.

*Argued February 10—officially released September 9, 2014*

(Appeal from Superior Court, judicial district of Tolland, Hon. Joseph J. Purtill, judge trial referee.)

*Sarah F. Summons*, assigned counsel, for the appellant (petitioner).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Marcia A. Pillsbury*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Ron Hall, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly (1) denied his petition for certification to appeal and (2) denied his petition for a writ of habeas corpus. We dismiss the appeal.

The following facts, as recounted in the petitioner's direct appeal; see *State* v. *Hall*, 120 Conn. App. 191, 991 A.2d 598, cert. denied, 297 Conn. 903, 994 A.2d 1288 (2010); and procedural history are relevant to our resolution of this appeal.

"On the night of June 11, 2007, Shamaila Riaz and Michael Purcell were working in the Best Way gasoline station and convenience store in Moosup. At approximately 9:30 p.m., the [petitioner], who wore a black covering over his nose and mouth, entered the store, pointed a silver handgun at Riaz with his left hand and demanded money, threatening to kill her if she did not comply. Riaz testified that the man was a Caucasian in his mid-forties with 'a big belly' and was approximately five feet, ten inches in height. She described his facial covering as a 'black winter mask.' Purcell described the man as an 'older' Caucasian with black hair, approximately five feet, nine inches or five feet, ten inches in height, who was 'kind of heavyset.' He testified that the covering on the [petitioner's] face was a black winter-type scarf. After Riaz had given the [petitioner] the approximately $400 that was in the cash register, the [petitioner] ran out of the store. Riaz chased after the [petitioner], running outside and shouting in an attempt to attract attention.

"Outside the gasoline station, six teenage boys in the area heard Riaz' shouts and saw the [petitioner] running away from the scene. Ryan Tetreault, one of the teenagers outside the store, testified as follows. Tetreault and five friends had just come out of a nearby Cumberland Farms store near the Best Way gasoline station when they encountered Riaz yelling that she had been robbed. Tetreault had known the [petitioner] prior to the evening in question. . . . Tetreault and his friends chased after the [petitioner], eventually cornering him in a nearby fenced-in parking lot. The [petitioner] then pointed his gun at the teenagers, and the covering over his face fell down. It was then that Tetreault, who was approximately four to five feet away, recognized the [petitioner]. The [petitioner] subsequently ran to a nearby parking lot, got into a maroon, four door Volkswagen Passat and drove away. Tetreault previously had seen the [petitioner] driving the same car.

"Local police arrived at the scene shortly after the [petitioner] had fled. Officers interviewed the witnesses

and viewed a video from a surveillance system within the store. On the basis of their investigation, the police suspected the [petitioner] to be the perpetrator. They proceeded to the [petitioner's] house, where, after a period of surveillance, they announced their presence, and the [petitioner] met them without protest. The [petitioner] spoke willingly to the police, and he provided three different accounts of his whereabouts during the time of the robbery. A search [of the petitioner's home], executed pursuant to a warrant . . . revealed .25 caliber handgun ammunition. Police found a black scarf on the passenger side floor of the [petitioner's] red Volkswagen automobile. Neither the handgun used in the robbery, nor the stolen proceeds ever were located. The [petitioner] subsequently was arrested and was charged with one count of robbery in the first degree in violation of [General Statutes] § 53a-134 (a) (4) and one count of larceny in the second degree in violation of [General Statutes] § 53a-123 (a) (3)." Id., 192–94.

At his criminal trial, the following occurred relative to the petitioner's claims on appeal. During its case-in-chief, "[t]he state offered [a] VHS videotape, which depicted the inside of the Best Way store at the time of the robbery, as an exhibit during Riaz' testimony. Riaz testified that the videotape fairly and accurately depicted the incident in question. Upon the state's offer of the videotape as a full exhibit, the [petitioner] offered no objection. Later in the trial, Detective Steven Berthiaume of the Plainfield police department testified as to how the videotape had been produced. Berthiaume stated that because the in-store surveillance system was digital and did not offer the capability of reproduction, he recorded the images with a handheld camera and later transferred the recording to a VHS tape. He admitted that the images on the videotape were not as clear as the images on the in-store system. The [petitioner] never challenged the videotape and made no motion to strike the evidence on the basis of the facts pertaining to the origin of the videotape, as revealed by Berthiaume." Id., 199.

Also at trial, Sherry White, the petitioner's girlfriend, testified for the petitioner. White testified that the petitioner had a court date on the day of the robbery for a pending case in which the petitioner thought he was "going [to have] to spend thirty days in jail . . . ." Following the close of the state's evidence, the petitioner elected to testify. On direct examination, the petitioner testified that he had "some issues" at the courthouse on the date of the robbery. On cross-examination, the state inquired about those pending charges. The state also inquired about the petitioner's prior misdemeanor convictions that ranged from fifteen to twenty-one years old.[2] The petitioner's counsel did not object to the state's cross-examination.

The jury found the petitioner guilty of robbery in the

first degree in violation of § 53a-134 (a) (4) and larceny in the second degree in violation of § 53a-123 (a) (3). The court sentenced the petitioner to a total effective sentence of fifteen years incarceration, execution suspended after ten years, with five years of probation.

The petitioner appealed his conviction to this court, claiming that (1) the evidence was insufficient to support his convictions, (2) the trial court improperly admitted the videotape depicting the robbery into evidence, and (3) the prosecutor acted inappropriately by cross-examining him concerning prior convictions. *State* v. *Hall*, supra, 120 Conn. App. 192, 200. This court determined that (1) there was sufficient evidence to support the petitioner's convictions, (2) the admissibility of the videotape was unreviewable because it was unpreserved, and (3) the petitioner failed to present an adequate record to review the prosecutorial impropriety claim. Id., 196, 199, 203. Thereafter, the petitioner filed a petition for a writ of habeas corpus on June 11, 2010, in which he alleged ineffective assistance of trial counsel on the basis of, inter alia, his counsel's (1) failure to object to the admission of the copied videotape and (2) failure to object to the state's cross-examination concerning his past misdemeanor convictions.

The habeas court denied the petitioner's petition for a writ of habeas corpus in a memorandum of decision filed May 30, 2012, finding that the petitioner's trial counsel was not ineffective by failing to object to either the admission of the videotape or the state's cross-examination. With respect to trial counsel's failure to object to the admission of the copied videotape, the habeas court determined that trial counsel's performance was deficient, but determined that the deficient performance was not prejudicial. The habeas court concluded that "[t]here is nothing to indicate that an objection to its admissibility would have been successful." The court reasoned that, although an original is generally required, a copy may be used in lieu of the original unless there are questions as to the tape's authenticity or the use of the copy would be unfair to the petitioner. The habeas court found that although the videotape depicts a shining object in the perpetrator's left hand, the object cannot be identified as a handgun. The court concluded, however, that the videotape was merely cumulative evidence and, given the testimony of Riaz and Purcell, had minimal impact.

The habeas court also concluded that trial counsel's failure to object to the state's cross-examination concerning the petitioner's past misdemeanors was also deficient, but not prejudicial. The court determined that, on the strength of the state's case, it "cannot be found that but for counsel's unprofessional errors, the results of the trial would have been different." Thereafter, the petitioner sought certification to appeal the denial of his petition for a writ of habeas corpus, which

was denied. This appeal followed.

On appeal, the petitioner claims that the habeas court abused its discretion when it denied his petition for certification to appeal and that the court improperly denied his petition for a writ of habeas corpus. Specifically, he claims that the habeas court improperly determined that counsel's failure to object to the copied videotape was not prejudicial. The petitioner also claims that prosecutorial impropriety—with respect to the state's cross-examination regarding the petitioner's previous misdemeanor convictions—"fatally tainted the fairness of the trial and deprived the [petitioner] of due process."

It is well established that "[w]hen the habeas court denies certification to appeal, a petitioner faces a formidable challenge, as we will not consider the merits of a habeas appeal unless the petitioner establishes that the denial of certification to appeal amounts to an abuse of discretion. . . . An abuse of discretion exists only when the petitioner can show that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994). [For this task] we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. . . .

"In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 116, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 772–73, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013).

I

The petitioner first claims that the habeas court abused its discretion when it denied his petition for certification to appeal because the habeas court improperly concluded that trial counsel's deficient per-

formance was not prejudicial. We disagree.

To demonstrate that counsel's deficient performance was prejudicial under *Strickland*, it was incumbent upon the petitioner to demonstrate "that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal." (Citation omitted; internal quotation marks removed.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 101–102, 52 A.3d 655 (2012). This, he has not done.

The videotape merely was cumulative of testimony from numerous eyewitnesses who identified the petitioner as the robber. As noted in the petitioner's direct appeal: "The state offered three eyewitnesses who positively identified the [petitioner]: Tetreault, [Jeremy] Porter and [Elizabeth] Mack. Significantly, two of these witnesses knew the [petitioner] prior to June 11, 2007. Tetreault's grandmother was related to the [petitioner's] brother by marriage, and Tetreault knew the [petitioner] prior to that evening. Mack also previously was acquainted with the [petitioner]. Porter's account of the relevant events was substantially the same as Tetreault's. The jury heard evidence that he and Tetreault were roommates and, thus, was able to credit or discount Porter's identification accordingly as it saw fit. . . .

"The videotape was a portion of the evidence presented by the state to establish the identity of the perpetrator of the crimes charged. The state also put forth substantial additional evidence, as has been detailed previously. Viewing the record evidence as a whole, as we must, it is of no moment that the videotape, considered in artificial isolation, may not have proven the [petitioner's] identity beyond a reasonable doubt. The entirety of the evidence was sufficient to support the [petitioner's] conviction." *State* v. *Hall*, supra, 120 Conn. App. 197–98.

Because the videotape was merely cumulative of the testimony of numerous eyewitnesses who identified the petitioner as the Best Way gasoline station robber, the petitioner cannot show that "as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, supra, 307 Conn. 101–102. We cannot say that the habeas court abused its discretion when it denied the petitioner's petition for certification to appeal with respect to the admission of the videotape.

## II

The petitioner's next claim is that "prosecutorial

impropriety fatally tainted the fairness of the trial and deprived [him] of due process.'' This claim is predicated on the state's inquiry into the petitioner's misdemeanor convictions during his cross-examination at trial.[3] The respondent, the Commissioner of Correction, claims that this claim is not reviewable because it was not raised in the petitioner's petition for a writ of habeas corpus. In the alternative, the respondent claims that the claim is procedurally defaulted because it was not properly raised in the petitioner's direct appeal and the petitioner has failed to satisfy the cause and prejudice test. See generally *Wainwright* v. *Syke*s, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). We agree that the petitioner's claim of prosecutorial misconduct is not reviewable, but for a different reason.

In response to a question from this court during oral argument, the petitioner conceded that the prosecutorial impropriety claim in his brief is really an evidentiary claim. As previously noted, the petitioner did not object to the admission of the evidence of his prior misdemeanor convictions at trial. On appeal, the petitioner has not sought review of this evidentiary claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), nor claimed any exceptional circumstances which would permit this court to review an unpreserved evidentiary claim. Therefore, this unpreserved claim is not properly before us and we decline to review it.[4]

The appeal is dismissed.

In this opinion the other judges concurred.

[1] We note that the petitioner amended his petition for a writ of habeas corpus at the time of trial to also allege ineffective assistance of trial counsel for failing to advise him properly regarding sentence review, and for failing to file a sentence review application pursuant to General Statutes § 51-195. The court granted the amended petition on this ground only and reinstated the petitioner's right to sentence review. Because the amendment to the petition is not at issue on appeal, in this opinion we refer only to the original petition.

[2] The state first asked the petitioner if he ever had any ''cases before in the criminal justice system.'' The petitioner responded with, ''motor vehicle.'' As noted in his direct appeal, the state then proceeded to question further about the petitioner's past convictions: ''During his cross-examination, the prosecutor asked the [petitioner]: '[W]ould it surprise you if I told you [that] you had a case involving the charge of harassment?' With regard to the harassment charge, which he indicated occurred in 1987, the prosecutor further inquired: 'Would it also surprise you that you were convicted for not going to court?' The [petitioner] did not respond directly to these questions. The prosecutor did not state the specific statutory provision under which the [petitioner] had been charged. The prosecutor proceeded to ask the [petitioner] whether he was 'surprised' to learn that he also had been convicted of failure to appear in court on a breach of the peace charge in 1993. The [petitioner] answered in the affirmative, and the prosecutor ceased the line of questioning. Again, the prosecutor did not state what degree of the crime of breach of the peace was involved.'' *State* v. *Hall*, supra, 120 Conn. App. 201–202.

[3] In his reply brief, the petitioner cited the same factual basis as used for his prosecutorial impropriety claim, but couches the claim in terms of ineffective assistance of counsel. That is, he contends that his trial counsel was ineffective because of his failure to object to the state's inquiry into his prior misdemeanor convictions. As a result, he contends that ''the court must decide whether the 'strategic' decision to not object to the prior misdemeanor convictions . . . was the product of sound tactical decisions, or

lay outside the range of competence displayed by lawyers with ordinary skill and training in criminal law." To the extent that *this* ineffective assistance of counsel claim was not addressed in his opening brief, we decline to review it. See *Grimm* v. *Grimm*, 276 Conn. 377, 393–94 n.19, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

[4] In his brief, the petitioner claimed that "[a] claim of prosecutorial impropriety, whether preserved at trial or not, warrants review." Although this is true; see *State* v. *Fauci*, 282 Conn. 23, 33, 917 A.2d 978 (2007); in light of the petitioner's concession that the claim is really evidentiary in nature, the petitioner has failed to articulate a basis on which this court can review an unpreserved evidentiary claim.

———————————————