******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEVIN STANLEY *v.* COMMISSIONER
OF CORRECTION
(AC 37662)

Gruendel, Prescott and Mullins, Js.*

*Argued February 8—officially released March 29, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Justine F. Miller*, assigned counsel, for the appel-

lant (petitioner).

*Matthew R. Kalthoff*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Rebecca A. Barry*, assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Kevin Stanley, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. He contends that the court improperly concluded that he failed to prove his claims of ineffective assistance of counsel. We affirm the judgment of the habeas court.

In denying the amended petition, the habeas court, *Oliver, J.*, aptly observed that "this case is a prime example of the abuse of the habeas corpus process . . . . [I]t could not have been the intent of the legislature to allow cases of this nature to come before the court in what, so far, has shown to be an unending loop." Before recounting the latest chapter in this saga, we first set forth the facts underlying the case.

"On November 7, 1989, at approximately 5:50 p.m., Bridget Page left her home on Orchard Street in New Haven and drove to the home of Javin Green, a friend whom she had been dating, in order to celebrate her birthday. Green lived on Dixwell Avenue in New Haven. Along the way, at the corner of Dixwell Avenue and Argyle Street, Page heard a noise that sounded like a 'tap'; then her car's rear window began to break up and fall out as she drove along. When Page arrived at Green's home she told him about the broken window and said that she thought some children had thrown rocks at the window. Green and Page decided to return to the intersection in order to determine who was responsible for the broken window.

"They drove back to the intersection of Dixwell Avenue and Argyle Street, parked the car on Argyle Street near the corner and walked over to five individuals who had congregated at the corner. The group consisted of three children, each approximately eight years old, and two young men, each approximately eighteen years old. Located on the corner of Dixwell Avenue and Argyle Street was a laundromat, an entrance to an apartment building and a beauty salon, all fronting on Dixwell Avenue. A street light and the lights from the laundromat were on. Green first spoke to the children, stating that one of them was responsible for the broken window.

"At this point, Brenda Clark, who resided at 425 Dixwell Avenue in an apartment directly over the laundromat opened the apartment building entrance door. Her attention was drawn to Green and one of the young men, whom she later identified in court as the [petitioner]. Green and the [petitioner] were standing close to each other, face to face, in front of the laundromat. Green was facing the street with his back to the laundromat. The [petitioner] was facing Green with his back to the street. Page stood within inches of Green, facing him, on his left. Green was upset and was thrusting his chest towards the [petitioner's] chest, saying 'I want

that little dude that, you know, shot the rock.' The [petitioner] began walking towards Green's right side in an effort to get behind Green. Green told him to stop and the [petitioner] replied 'Oh, yes.' The [petitioner] next moved back three or four steps towards the street, reached into his pants, pulled out a revolver and fired three or four shots at Green.

"After the shots were fired, Green grabbed his face and stomach, cried out 'oh, oh' and left the scene by running around the corner onto Argyle Street. Following the departure of Green and Page, the [petitioner] turned his gun towards a 'little boy' who ran into the door where Clark was standing. The [petitioner] looked over at Clark, turned around, walked away and entered a nearby car. Page, who initially had not been aware that Green had been shot, followed him around the corner and saw him enter her car on the passenger side. Green told her that he had been shot and she drove him to the hospital, where he died." *State* v. *Stanley*, 223 Conn. 674, 676–77, 613 A.2d 788 (1992).

The petitioner was arrested and a trial followed, at the conclusion of which the jury found him guilty of murder in violation of General Statutes § 53a-54a. Id., 675. The trial court thereafter sentenced the petitioner to a term of sixty years incarceration. Our Supreme Court affirmed the judgment of conviction on direct appeal. Id., 696.

In his first action, the petitioner, represented by Attorney Judith Wildfeuer, alleged in his petition ineffective assistance on the part of his trial counsel, Attorney Leo Ahern. Specifically, the petitioner alleged that Ahern failed to adequately "(1) consult and advise [him] as to the evidence, defenses, plea negotiations, the consequences of plea, whether to testify and as to the suppression of his statement [to the police]; (2) investigate facts, witnesses and police reports; (3) prepare for the hearing in probable cause, suppression of his statement and identification, for cross-examination of witnesses and presentation of evidence; (4) prepare for trial to present and exclude evidence, cross-examine and set out a theory of defense for effective argument on the motion for judgment of acquittal and closing argument; [and] (5) preserve [his] right to sentence review." *Stanley* v. *Commissioner of Correction*, Superior Court, judicial district of Hartford, Docket No. CV-94-0538267-S (November 29, 1999). The habeas court agreed only with the latter claim and restored the petitioner's right to sentence review. Id. The court rejected all other allegations of ineffective assistance of counsel. Id. From that judgment, the petitioner unsuccessfully appealed to this court. *Stanley* v. *Commissioner of Correction*, 67 Conn. App. 357, 786 A.2d 1249 (2001), cert. denied, 259 Conn. 922, 792 A.2d 855, cert. denied, 537 U.S. 83, 123 S. Ct. 155, 154 L. Ed. 2d 59 (2002).

In his second habeas action, the petitioner, repre-

sented by Attorney Genevieve Salvatore, alleged that Ahern rendered ineffective assistance of counsel by failing to object to prosecutorial impropriety at closing argument. The court dismissed the petition on the ground of procedural default, stating: "The motion to dismiss is granted because . . . the petition presents the same ground as a prior petition previously denied and fails to state new facts or proffer new evidence not . . . available at the time of the prior petition. . . . This [claim] could well have been raised thirteen years ago when the first habeas petition [was filed], which addressed multiple grounds of ineffective assistance of counsel or multiple specifications; this is simply another specification of the same general ground of ineffective assistance of trial counsel." *Stanley* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-04-0004423-S (November 5, 2007).

In his third habeas action, the petitioner, then represented by Attorney Damon Kirschbaum, alleged ineffective assistance of both his appellate counsel and his first habeas counsel. The petition alleged that Attorney Neal Cone, who represented the petitioner in the direct appeal of his judgment of conviction, rendered ineffective assistance by failing to raise a claim of prosecutorial impropriety. The petition further alleged that Wildfeuer rendered ineffective assistance in his first habeas action by failing to allege such a claim of ineffective assistance on the part of Cone. In its July 11, 2011 oral decision, the habeas court concluded that no prosecutorial impropriety transpired, and thus rejected both claims. *Stanley* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-08-4002493-S (July 11, 2011). Although the petitioner, represented by Attorney Paul Krause, initially appealed from that judgment to this court, that appeal later was withdrawn.

The petitioner commenced the present habeas action, his fourth, in 2012. His amended petition for a writ of habeas corpus contained three counts, which alleged ineffective assistance on the part of his first habeas counsel, Wildfeuer, his second habeas counsel, Salvatore, and his third habeas counsel, Kirschbaum.[1] Although numerous in nature, those allegations of ineffective assistance may be distilled to a single issue— namely, whether the petitioner's habeas counsel rendered ineffective assistance by failing to allege that Ahern had rendered ineffective assistance in failing to procure the allegedly exculpatory testimony of Greg McCoy.[2]

A trial was held before the habeas court on December 19, 2014. At the outset, the parties consented to the court "taking judicial notice of previous proceedings and previous decisions relating to [the petitioner]" and his habeas actions and direct appeal. The first witness

to testify was the petitioner. The gist of his testimony was that McCoy would have testified at trial that the petitioner was not present when the shooting occurred, thereby rebutting Clark's identification of him at trial as the perpetrator.

The court then heard from McCoy, who testified that he was thirteen years old at the time of the shooting. On the day of the shooting, he had been playing outside with "his friend," the petitioner's younger brother, when Green approached them.[3] McCoy testified that there were "a number of people" outside at the time of the altercation and that he remembered "the faces that I'd seen." McCoy testified that he never saw either the petitioner or Clark at any time that day. He also testified that he heard gunfire as he "was walking into the door" of the apartment building where he resided and that he did not see who shot Green. During his testimony, McCoy acknowledged that his criminal record included two felony convictions, a violation of probation that led to incarceration, and a misdemeanor assault conviction.

Kirschbaum represented the petitioner in his third habeas action. He testified at the habeas trial that, after receiving the petitioner's file from Salvatore, he "was unable to identify any [meritorious] claims . . . ." When asked why he had not filed an *Anders* brief,[4] Kirschbaum explained that "[i]t was late in the process, and I don't like filing *Anders* briefs. . . . And [the petitioner] wanted his prosecutorial impropriety claim to be ruled on."

The fourth and final witness at the habeas trial was Ahern. Ahern testified that the petitioner was nineteen or twenty years old at the time of the criminal trial. He also testified that, in his opinion, the state "certainly seemed to" have a strong case against the petitioner. Ahern noted that the petitioner had provided a statement to the police in which he placed himself at the scene of the shooting. During his investigation, Ahern spoke with the petitioner's mother at length, who indicated that the petitioner was inside their apartment at the time of the shooting. Nevertheless, Ahern testified that the petitioner had informed him that he was present at the scene of the shooting, but was not the perpetrator. Ahern had no recollection of the name "Greg McCoy," but emphasized that the events in question had transpired nearly one-quarter century ago.

In its oral memorandum of decision, the court did not find McCoy's testimony to be credible, expressly noting its "concerns relating to his age at the time of the shooting, his friendship with the brother of the petitioner, and his felony convictions." The court also found that, even if it were to credit McCoy's testimony, the petitioner could not establish prejudice, as his testimony did "little or nothing to contest and attack the accuracy and credibility and veracity of the testimony of [Clark]. McCoy testified that he did not see the shooting,

could not identify the shooter, did not see [the petitioner] outside at the time of the shooting, and did not see Clark." Accordingly, the court found that McCoy's testimony likely would not have made a difference on the outcome of the petitioner's criminal trial. The court reasoned that because the petitioner could not establish prejudice with respect to Ahern's performance at trial, "there is no prejudice as to the performance of Wildfeuer, Salvatore, or Kirschbaum." The court, therefore, denied the petition for a writ of habeas corpus. The court subsequently granted the petition for certification to appeal to this court, and this appeal followed.

To prevail on a claim of ineffective assistance of counsel pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a habeas petitioner must "show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense [by establishing a reasonable probability that, but for the counsel's mistakes, the result of the proceeding would have been different]. . . . [A] successful petitioner must satisfy both prongs . . . [and the] failure to satisfy either . . . is fatal to a habeas petition." (Citation omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 150 Conn. App. 371, 377–78, 90 A.3d 374, cert. denied, 312 Conn. 919, 94 A.2d 640 (2014).

As the habeas court noted in its decision, to establish ineffective assistance on the part of his various habeas counsel, the petitioner bore the burden of demonstrating that his trial counsel rendered ineffective assistance in failing to procure the testimony of McCoy at the petitioner's criminal trial. See, e.g., *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 117, 10 A.3d 1079 ("[a petitioner's] claims regarding previous habeas counsel will not succeed if the claims of ineffective assistance of trial counsel lack merit"), cert. denied, 300 Conn. 919, 14 A.3d 333 (2011); *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 394, 966 A.2d 780 (2009) (to prevail on claim of ineffective assistance of habeas counsel predicated on ineffective assistance of trial counsel, petitioner must prove that both habeas counsel and trial counsel were ineffective). We agree with the court that the petitioner has not met that burden.

First and foremost, it is axiomatic that the habeas court "as trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014). On appeal, a reviewing court is obligated to defer to the habeas court's "assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) Id. The habeas court here did not find McCoy's testimony credible. In

light of that assessment, the petitioner cannot surmount the "herculean task" of establishing both ineffective assistance of trial counsel and ineffective assistance of habeas counsel; see *Mukhtaar* v. *Commissioner of Correction*, 158 Conn. App. 431, 439, 119 A.3d 607 (2015); as those allegations pertain to the failure to procure McCoy's testimony at the petitioner's criminal trial.

Second, we concur with the court's determination that McCoy's testimony likely would not have altered the result of the petitioner's criminal trial. Although McCoy stated that he did not see the petitioner at any time on the day of the shooting, other witnesses placed the petitioner at the scene, as did the petitioner himself in his statement to the police.[5] Moreover, in his testimony, McCoy indicated that he was not present at the time of the shooting, but rather was entering his apartment. His testimony, therefore, sheds little light on the question of whether the petitioner shot Green. Because he was not present at the time of the shooting, McCoy's testimony also does not undermine the eyewitness testimony provided by Clark, who testified that she saw the petitioner fire a gun directly at Green. See *State* v. *Stanley*, supra, 223 Conn. 682 n.4. Furthermore, McCoy's testimony has no bearing whatsoever on the eyewitness testimony of Page, who also was present at the time of the shooting.[6] See id., 679. Page testified at the petitioner's criminal trial that, during the altercation between the petitioner and Green, she saw the petitioner pull out a gun and fire several shots.[7] Id., 679–80.

In light of the foregoing, we conclude that the petitioner cannot demonstrate that, had Ahern offered McCoy's testimony, the result of his criminal trial likely would have been different. He therefore has not established the requisite prejudice with respect to the assistance rendered by either his trial counsel or his various habeas counsel. Accordingly, the court properly denied his amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The petition also contained a fourth count alleging ineffective assistance on the part of Krause in handling his appeal in the third habeas proceeding. In denying the petition, the court in its oral decision did not discuss that claim beyond noting that the petitioner had "failed to demonstrate any prejudice from the withdrawal . . . ." The petitioner in this appeal does not challenge the propriety of that determination. We therefore confine our review to the claims presented by the petitioner. See *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 408–409, 114 A.3d 168, cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015).

[2] In count one of the amended petition, the petitioner alleged that Wildfeuer rendered ineffective assistance by failing to raise an ineffective assistance of counsel claim regarding Ahern's pretrial investigation of McCoy, who allegedly would have provided exculpatory testimony at the petitioner's criminal trial. In count two, the petitioner alleged that Salvatore rendered ineffective assistance in that she failed to raise an ineffective assistance of counsel claim regarding Wildfeuer's failure to raise an ineffective assistance claim regarding Ahern's investigation of McCoy. In count three, the petitioner

alleged that Kirschbaum rendered ineffective assistance of counsel by (1) failing to raise an ineffective assistance claim regarding Wildfeuer's failure to raise an ineffective assistance claim regarding Ahern's investigation of McCoy and (2) failing to raise an ineffective assistance claim regarding Salvatore's failure to raise an ineffective assistance claim regarding Wildfeuer's failure to raise an ineffective assistance claim regarding Ahern's investigation of McCoy. Those allegations all share a common nucleus— Ahern's allegedly ineffective assistance of counsel in failing to procure McCoy's testimony at the petitioner's criminal trial.

We note that the petitioner also alleged that Wildfeuer, Salvatore, and Kirschbaum rendered ineffective assistance by not raising an ineffective assistance of counsel claim regarding Cone's alleged failure to pursue a due process claim in the petitioner's direct appeal. The petitioner withdrew those claims at trial before the habeas court.

[3] McCoy testified that, in the years following the shooting, he and the petitioner's brother "kept running into each other periodically. . . . [W]e always remained friends . . . ."

[4] See *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (establishing constitutionally required procedures to be followed by counsel and courts in cases in which counsel believes that appeal is frivolous).

[5] As our Supreme Court noted in the petitioner's direct appeal: "The jury was given copies of a statement made by the [petitioner] to a New Haven police officer, approximately one month after the shooting had occurred, in which the [petitioner] stated that Green had accused the [petitioner's] younger brother, who was at the scene of the shooting, of breaking Page's window. In that statement, the [petitioner] also stated that Green had threatened to harm [his] younger brother and that the [petitioner] had replied that Green 'wasn't [going to] . . . do [anything] to [his brother].' " *State* v. *Stanley*, supra, 223 Conn. 679.

[6] At the time of the shooting, Page "stood within inches of Green . . . ." *State* v. *Stanley*, supra, 223 Conn. 676.

[7] At the habeas trial, the parties stipulated that the court could take judicial notice of "previous proceedings and previous decisions" involving the petitioner, including his direct appeal. In the petitioner's direct appeal, our Supreme Court stated that Page "witnessed the shooting" and that she testified that, during the altercation with Green, the petitioner "had taken three or four steps back toward the street, away from Green, had pulled out a gun and had fired three or four shots." *State* v. *Stanley*, supra, 223 Conn. 679–80.

At oral argument before this court, the petitioner's counsel challenged the accuracy of that statement, stating that the Supreme Court "slipped up there." We note that the petitioner has not filed any transcripts from his criminal trial. The record, therefore, plainly is inadequate to review such a charge. Moreover, the petitioner did not dispute that factual matter in his direct appeal before the Supreme Court; instead, he acknowledged that Page testified that she saw him firing shots, but argued, inter alia, that "Page testified that she thought the [petitioner] had been shooting at the ground . . . ." *State* v. *Stanley*, supra, 223 Conn. 680. In light of that testimony, the petitioner argued in his direct appeal that "the evidence allowed the conclusion that [he] had aimed the gun at the ground and . . . had no intent to kill Green." Id.

On a more fundamental level, the charge levied by the petitioner is beyond the purview of this appellate tribunal. As an intermediate appellate court, this panel is not at liberty to discard, modify, reconsider, reevaluate, or overrule the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010). This court, therefore, cannot countenance a charge such as that raised by the petitioner at oral argument.